**Affirmed in Part and Reversed and Rendered in Part and Opinion filed April 30, 2014.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-11-01088-CV

---

### TANGLEWOOD HOMES ASSOCIATION, INC., Appellant

### V.

### STEWART A. FELDMAN, MARLA B. FELDMAN, AND MICHAEL T. KELLY, TRUSTEE, Appellees

---

## NO. 14-11-01089-CV

---

### STEWART A. FELDMAN, MARLA B. FELDMAN, AND MICHAEL T. KELLY, TRUSTEE, Appellants

### V.

### TANGLEWOOD HOMES ASSOCIATION, INC., Appellee

---

**On Appeal from the 80th District Court
Harris County, Texas
Trial Court Cause No. 2008-65420**

---

# O P I N I O N [1]

These consolidated appeals arise out of a protracted dispute between Stewart and Marla Feldman and Tanglewood Homes Association, Inc. over the Feldmans' desire to expand their home. When the Association rejected the Feldmans' expansion plans as a violation of the Tanglewood Deed Restrictions, the Feldmans filed suit. Michael T. Kelly, the trustee for a trust that owned the adjacent lot, intervened in the litigation. At the conclusion of a lengthy, bifurcated trial, the trial court signed a final judgment awarding the Feldmans and the Trustee (collectively, plaintiffs) declaratory relief as well as monetary damages and attorneys' fees. All parties appealed from that judgment. Because we conclude the Feldmans' expansion plans are permitted by the Deed Restrictions, we affirm the challenged portions of the trial court's judgment awarding plaintiffs declaratory relief. We also hold, however, that the jury's "and/or" liability findings will not support the monetary damage awards, and plaintiffs may not recover their attorneys' fees under the statutes on which they rely. We therefore reverse those portions of the judgment and render a take-nothing judgment on plaintiffs' claims for damages and fees.

## BACKGROUND

### A. Tanglewood Section 8 is a deed-restricted subdivision.

The Feldmans own a home, Tilbury I, in Section 8 of the Tanglewood subdivision. Each section of Tanglewood is governed by a specific set of deed restrictions that provide, in pertinent part:

---

[1] This is the opinion of the Court with the exception of Section V.C. Chief Justice Frost does not join Section V.C., which is the opinion of only Justice Busby.

RESTRICTIONS

For the purpose of creating and carrying out a uniform plan for the improvement and sale of TANGLEWOOD, Section 8, . . . according to plat thereof filed in the Office of the Harris County Clerk . . . ; [the Association] being the sole owner of all property located in said TANGLEWOOD Section 8 desires to restrict the use and development of the property . . . in order to insure that it will be a high class restricted district;

Now, therefore, [the Association] . . . does hereby impose the following restrictions on said property which shall constitute covenants running with the land, and shall inure to the benefit of [the Association] . . . and to each and every purchaser of lands in said Addition and their assigns . . . and any one of said beneficiaries shall have the right to enforce such restrictions using whatever legal method deemed advisable . . . .

. . .

(3)    Only one residence shall be constructed on each lot; however, this shall not prohibit the construction of a residence on a portion of two or more lots as shown by said map, provided such tract constitutes a homesite as defined in the succeeding paragraph.

(4)    Parts of two or more adjoining lots facing the same street in the same block may be designated as one homesite provided the lot frontage shall not be less than the minimum frontage of the lots in the same block facing the same street.

. . .

(24)   No building shall be built closer to the street or side property lines than the distance set forth in the schedule attached hereto . . . .

**B.    The Feldmans plan to expand their home.**

In August 2008, the Feldmans learned their next-door neighbor, the owner of Tilbury II, was selling his home. The Feldmans had long been interested in expanding their home by converting their existing garage into livable space and building a new garage onto the house. The Feldmans' initial plan was to purchase Tilbury II, annex a portion of the lot into Tilbury I, construct the new garage over

3

the original property line and onto the annexed portion, and then sell the remainder of Tilbury II as a separate homesite. Based on that initial concept, the Feldmans, through the Trustee, placed Tilbury II under a purchase contract.

Once the Trustee had placed Tilbury II under contract, Mr. Feldman contacted the Association regarding his home expansion plans. Mr. Feldman informed the Association that he believed his expansion plans were permitted by paragraphs 3 and 4 of the Deed Restrictions. The Association's manager, William Roe, responded that he did not believe the Deed Restrictions allowed a home owner to annex and build on a portion of an adjacent lot, and then sell the remainder of that lot as a separate homesite. According to the Association, the originally platted lot lines were part of the Deed Restrictions and the Feldmans' plan would result in two residences on a single lot, violating paragraph 3 of the Deed Restrictions.

Although the Feldmans and the Association continued communicating through September with neither side changing its position, the Trustee closed on Tilbury II on October 1, 2008. That same day, a Cross Special Warranty Deed was signed in which portions of Tilbury I and Tilbury II were exchanged. This deed was never filed in the Harris County Property records.

Just over a week later, the Association sent the Feldmans a letter formally denying their home expansion plans. According to the Association, the Feldmans' "plans do not address either the existing setbacks or setbacks applicable to the remainder partial lot resulting from the proposed subdivision." The Association then informed the Feldmans that "the setbacks as platted would have to be changed," which the Association lacked authority to do. The denial letter concluded by stating that the Association's board of directors "considered all of these factors, as well as prior Board decisions" when it voted to deny the

4

Feldmans' proposal.

### C. The Feldmans sue the Association and the Trustee intervenes.

Faced with the Association's denial of their plans, the Feldmans filed suit against it at the end of October 2008, asserting numerous causes of action. The Trustee eventually intervened in the litigation, asserting the same causes of action as the Feldmans.

The parties nevertheless continued to communicate directly regarding the Feldmans' plans. These communications included a notice to the Association that the Feldmans and the Trustee had located a qualified purchaser for Tilbury II, who required a commitment from the Association that Tilbury II minus the land annexed into Tilbury I could be used a separate residence. The Association did not provide that commitment and the sale fell through.

The Feldmans also communicated with the Association about the construction of a fence along the new boundary line between Tilbury I and Tilbury II. One communication included an amended plat, which had been approved by the City of Houston and subsequently filed in the Harris County property records. In the amended plat, the City of Houston recognized and approved the new boundary line between Tilbury I and Tilbury II.

The Association initially did not recognize that the provided plat was an amended plat, and it notified the Feldmans that it was not approving the proposed fence. When the Association realized that the Feldmans had obtained an amended plat, it voted to reconsider the Feldmans' expansion plans. On August 17, 2009, the Association sent a letter notifying the Feldmans that "the construction of a garage and driveway on your lot at [Tilbury I] per the reconfiguration shown on the amending plat are approved, subject to compliance with all applicable setbacks

5

(which cannot be confirmed in absence of the submission of plans on the basis of the amending plat). In addition, the fence is approved."

The Association later sent a formal "Approval of Construction Plans," requesting that Feldman sign and return the document to indicate his agreement to the terms and conditions for building the garage expansion. This document contained various restrictions on the actual construction work, as well as a disclaimer that the previously communicated construction approval concerned "only the plans associated with the expansion of [Tilbury I] across the lot line onto a portion of the property at [Tilbury II]." The disclaimer also stated that the Association "does not forego or waive any argument, contention or defense it may have or assert with respect to any issue not existing or hereafter arising in the pending litigation between [the parties]. [The Association] continues to assert that, if the expansion of [Tilbury I] is completed and [Tilbury II] is sold to a third party, construction of a new home on [Tilbury II] is prohibited by the deed restrictions. . . ."

Mr. Feldman signed the document but he also scratched through the disclaimer, noting that he was "relying on [the Association's initial] approval letter . . . ." Despite this disagreement regarding the impact on Tilbury II, construction began on the Tilbury I garage expansion and was completed in October 2010.

**D.     The court bifurcates the trial, and Phase One is tried to a jury.**

While the parties were negotiating directly regarding the Association's approval of the Feldmans' expansion plans, the litigation over the Association's initial denial of the plans continued. The Feldmans filed a second amended petition and then added numerous supplements prior to trial. By the time the trial commenced, the Feldmans asserted causes of action for breach of contract, tortious interference with existing business relations, fraud and fraud in the inducement,

6

negligent misrepresentation, promissory estoppel, and unjust enrichment, as well as an allegation that the Association's denial of their construction plans was arbitrary and capricious under section 202.004 of the Property Code. *See* Tex. Prop. Code Ann. § 202.004(a) (West 2007). In addition, the Feldmans sought injunctive relief ordering the Association to stop disapproving their construction plans and cease impairing the sale of a reconfigured Tilbury II lot. Finally, the Feldmans sought to recover their attorneys' fees under Chapter 38 of the Civil Practice and Remedies Code and section 5.006 of the Property Code. *See* Tex. Civ. Prac. & Rem. Code Ann. § 38.001 (West 2008) (fees recoverable on valid breach of contract claim); Tex. Prop. Code Ann. § 5.006 (West Supp. 2013) (fees recoverable in successful action for breach of a restrictive covenant).

Soon after he intervened, the Trustee filed a motion to bifurcate the trial into two phases. The trial court granted the unopposed motion. The court's bifurcation order provided that Phase One of the trial would adjudicate the Feldmans' and the Trustee's liability claims against the Association. Phase One would also determine the Feldmans' damages, if any. Phase Two would, if necessary, determine any damages sustained by the Trustee.[2]

At the beginning of the pre-trial conference, the day before Phase One of the trial was scheduled to start, the trial court asked the parties whether there were any "questions other than law, questions of fact that would be appropriate to be submitted to a jury." The trial court's inquiry sparked a discussion that led to the trial court announcing the following:

---

[2] As none of the parties to this appeal have challenged the validity of the trial court's bifurcation order, we express no opinion regarding the propriety of that order. *Cf.* Tex. Civ. Prac. & Rem. Code Ann. § 41.009 (West 2008) (providing that, upon a defendant's motion, a trial court shall bifurcate a trial, with the first phase determining liability and compensatory damages and the second, if necessary, the amount of punitive damages).

. . . I believe the August 17th, 2009 letter sent from the Association to the Feldmans without any qualification or reservation, where the fence along the new property line as replatted was approved, and the construction plans as previously submitted are approved, just subject to what appears to be final approval, and I think that might be as to the way the appearance that would be more than the existence of the structure or how it's situated on the property.

But subject to that the Court finds that since this took place, while there's been protracted litigation in this case, and combined with the fact that there was no effort by the Association to obtain or seek injunctive relief to stop the fence from going in or to stop the construction going on, and actually affirmatively approved it without reservation or qualification, other than maybe just the aesthetic quality, . . . that the Association would have waived any objection to the situating of the improvement on the property or the new fence line, or its previous requirement that Tilbury II would have to be demolished or cannot be reconstructed.

The Court finds that the approval and the construction that took place still provides that in fact there is only one house on Tilbury I, there's one house on Tilbury II, and the Association is estopped from claiming that now that the Feldmans, in reliance on the approval, have gone ahead and completed the . . . improvement on Tilbury I, and had apparently substantially commenced or engaged in the improvement of Tilbury I at the time that a later document purporting to rescind part of the approval came through, that again, there was waiver and estoppel that would prevent the Association from either requiring the Feldmans to tear down the improvements on Tilbury I, or to have to tear down Tilbury II, or require that Tilbury II be demolished.

So, . . . the Court finds that the Association apparently was within its legal right to initially deny the plans until certain requirements were met or until there was a compliance with the [Association's] guidelines.

And so, I think the question then becomes at the time that the plans were approved, are the Feldmans entitled to legal fees at some point, which may be from August 17, 2009 or a date to be more clearly identified.

8

After a question seeking clarification, the Court continued:

> What we may need to address is, to have a vehicle for the Court to make a formal ruling on that, . . . does a motion for summary judgment need to be submitted to address that issue. . . . [A]gain, what I'm considering is, is there something that would justify having a jury here for two weeks, and I don't think so. That's why I'm addressing it now, because if need be I can give leave to submit a summary judgment that would allow the Court to formally make the ruling and then respectfully would allow the Homeowners Association if you wish to appeal the Court's findings as a matter of law on that issue.

Plaintiffs did not seek leave to file a motion for summary judgment on this issue and instead proceeded to trial the next day on the pleadings in place at that time, which did not include a claim for declaratory relief.

The pre-trial conference then addressed many topics related to the facts of the case, the causes of action asserted by the Feldmans, and ultimately whether the Feldmans, if they were successful, would be able to recover attorneys' fees. The Feldmans continued to argue they could recover their fees under either section 5.006 of the Property Code or Chapter 38 of the Civil Practice and Remedies Code. During this discussion, the trial court expressed doubt that either statute provided the Feldmans with a basis to recover fees under the facts of the case.

Trial commenced the next day, and throughout the trial the court continued the dialogue with the attorneys regarding the Feldmans' ability to recover attorneys' fees. The trial court continued to express doubt that either statutory provision authorized a recovery of fees, and it raised the possibility of other theories that would allow plaintiffs to recover their fees. Then, on the fifth day of trial, the following exchange took place:

> [Feldmans' Counsel]: Your Honor, we certainly believe that 5.006 and Chapter 38 entitle us to attorney's fees. We have basically

9

presented our whole case, we are about to finish. . . .

. . . .

And if the Court is of the opinion that Chapter 38 and the Property Code do not lend itself to attorney's fees as presented, then we would ask for a trial amendment in order to assert it as a declaratory judgment action . . . . We don't have any new evidence, everything has been presented, it's just as the evidence presented I think that supports it that way if the Court feels it's more appropriate.

[Association's Counsel]: Declaratory judgment in what regard?

THE COURT: To determine whether or not the Feldmans were allowed to build the - -

[Feldmans' Counsel]: Home addition, the fence and the footprint.

THE COURT: Whether or not they were allowed to build the improvements or not. That's the whole issue in the case and that was in dispute from the beginning. And I don't know any basis why they would not be entitled to a trial amendment to have it framed as a - - because they did plead for attorney's fees all the way along. And just from my reading it seems that that would be - - the only appropriate vehicle I can see at this time to allow them to submit attorney's fees would be under the declaratory judgment act.

The trial court concluded: "I don't see any reason why they wouldn't be allowed to amend, trial amendment on that, nothing changed under the facts of the case." Over the Association's objection, the trial court gave the Feldmans leave to amend their pleadings to add a declaratory judgment cause of action.

At the conclusion of the evidence in Phase One of the trial, the court granted a directed verdict on the Feldmans' request for declaratory judgment. The remainder of the case was then submitted to the jury. In Question 1, the jury was asked: "Do you find that [the Association's] denial of any of the Feldmans' and/or

10

the Trustee's plans was arbitrary or capricious?"[3]  The jury answered "Yes."  In Question 3, the jury answered "Yes" to the following question: "Did [the Association] make a negligent misrepresentation on which the Feldmans and/or the Trustee justifiably relied?"  The jury went on to find in Question 2 that the earliest date the Association acted arbitrarily and capriciously in denying the Feldmans' and/or the Trustee's plans was October 9, 2008, and in Question 4 that this was also the date of the earliest negligent misrepresentation by the Association.

Questions 5 and 6 submitted the Feldmans' damages.  Neither question was conditioned upon a liability finding in favor of the Feldmans alone.  Instead, in Question 5, the jury was instructed to answer if it had answered "Yes" to Question 1 (regarding arbitrary or capricious denial), and to answer Question 6 if it had answered "Yes" to Question 3 (regarding negligent misrepresentation).  In response to Question 5, the jury found that $45,000 would fairly and reasonably compensate the Feldmans for their damages "that resulted from the date [the jury] found in [its] answer to Question No. 2."  In response to Question 6, the jury found that $45,000 would fairly and reasonably compensate the Feldmans for their damages "that resulted from the date [the jury] found in [its] answer to Question No. 4."[4]  Finally, the jury found that the Feldmans were entitled to $400,000 as reasonable attorneys' fees for the necessary services rendered by their attorneys in the preparation and trial of the case through the day of the jury's verdict.  The jury also found reasonable attorneys' fees for the necessary services to be rendered by

---

[3] The question defined "arbitrary or capricious" as "a decision not done according to reason or judgment, or done without fair, solid, and substantial cause, and is a willful and unreasoning action, an action without consideration and in disregard of the facts and circumstances that existed at the time the decision was made."

[4] Because we reverse the damages on other grounds, we express no opinion regarding whether section 202.004(a) of the Property Code creates or recognizes a cause of action for arbitrary or capricious exercise of discretionary authority by a property owners' association that can support an award of compensatory damages.

the Feldmans' attorneys in the event of a motion for new trial and in the event of an appeal.

### E.    Phase Two is tried, and the court signs a judgment based on both verdicts.

Before Phase Two began, the Association's new trial counsel asserted that a fatal ambiguity existed in the liability findings made by the now-discharged Phase One jury. According to the Association, the use of "and/or" language in both Questions 1 and 3 made the charge fatally ambiguous because there were no independent liability findings for either the Feldmans or the Trustee. The trial court allowed Phase Two of the trial to proceed as scheduled. At the conclusion of the evidence, the jury returned a verdict finding that $248,560 would fairly and reasonably compensate the Trustee for his actual damages. The jury also found $92,212.81 to be the reasonable attorneys' fees for the necessary services rendered by the Trustee's attorneys in the preparation and trial of the case, as well as other amounts for necessary services in the event of post-trial motions and an appeal.

The trial court eventually signed an amended final judgment based on the juries' verdicts and its own directed verdict. The trial court denied the Association's motions for judgment notwithstanding the verdict and for new trial.

### ANALYSIS

All parties to this litigation have appealed the trial court's judgment. We first address the issues raised by the Association and then turn to the issues raised by plaintiffs in their joint cross-appeal.

### The Association's Issues on Appeal

### I.    The per diem award contained in the amended final judgment does not deprive this court of jurisdiction to resolve this appeal.

Because it challenges this Court's jurisdiction to hear this appeal, we begin

12

with the Association's sixth issue, in which the Association contends that the amended final judgment is interlocutory because it includes an award of per diem damages to the Trustee for "holding costs" on Tilbury II. The award of $52.67 per day began on April 19, 2011 and continues "until all appeals, if any, are final." We conclude that this per diem award does not render the judgment interlocutory, so we have jurisdiction to hear these appeals.

The Association cites *Hinde v. Hinde*, 701 S.W.2d 637, 639 (Tex. 1985), for the general proposition that a judgment cannot condition recovery on uncertain events or base its validity on what the parties might do post-judgment. *See also Olympia Marble & Granite v. Mayes*, 17 S.W.3d 437, 440 (Tex. App.—Houston [1st Dist.] 2000, no pet.) ("If the amount awarded by the judgment cannot be determined, the judgment is interlocutory."). Because the per diem language in the amended final judgment refers to specific, ascertainable dates that appear—or will appear in due course—in the record, we are not faced with the situation addressed in *Hinde*.

Here, the amended final judgment (1) orders a fixed payment in the amount of $52.67 per day; (2) identifies the basis for the payment as holding costs, which are defined as property taxes and fees due to the Association; and (3) fixes the duration of the payment as running "from April 19, 2011 until the judgment is final, or until all appeals, if any, in this case are final, whichever last occurs." If this judgment were affirmed on appeal, a clerk could consult the rules and court documents to determine the date when the per diem payment stops, and then calculate the total amount due. Accordingly, this judgment is an appealable final judgment. *See Int'l Sec. Life Ins. Co. v. Spray*, 468 S.W.2d 347, 349–50 (Tex. 1971) (noting rule that final judgment must be definite and certain, and concluding that "[s]o long as the judgment of the court makes the figure which the clerk is to

13

place in the writ of execution determinable by ministerial act, the judgment cannot be said to lack definiteness").[5] We overrule the Association's sixth issue.

## II. The "and/or" liability verdicts do not support a judgment for damages in favor of either plaintiff.

In its first issue, the Association contends the trial court erred when it signed the amended final judgment because the verdict on liability is fatally ambiguous. The Association points to the two liability questions quoted above, each of which allowed the jury to answer in the affirmative as to the Feldmans "and/or" the Trustee. Given these questions, the Association contends, it is impossible to know whether the jury's "Yes" answers are findings in favor of the Feldmans, the Trustee, or both. We agree.

The Feldmans and the Trustee sought to impose liability on the Association. Therefore, each plaintiff had the burden to secure jury findings that could support a judgment in its favor. *See Ramos v. Frito-Lay, Inc.*, 784 S.W.2d 667, 668 (Tex. 1990); *W & F Transp., Inc. v. Wilhelm*, 208 S.W.3d 32, 45 (Tex. App.—Houston [14th Dist.] 2006, no pet.). Here, neither plaintiff did so. Each liability question included "and/or" language and a single answer blank. Thus, it is impossible to know whether the jury's "Yes" answer to Question 1 is a finding that the Association's denial of the Feldmans' plans or the Trustee's plans—or both—was arbitrary or capricious. Similarly, it is impossible to know whether the jury's "Yes" answer to Question 3 is a finding that the Association made a negligent misrepresentation on which the Feldmans or the Trustee—or both—justifiably

---

[5] *See also Riner v. Neumann*, No. 05-07-010053-CV, 2008 WL 4938438 at *1 (Tex. App.—Dallas Nov. 20, 2008, no pet.) (mem. op.) (stating that a judgment must provide the means so that a ministerial officer can determine the amount of damages based on ascertainable facts, "such as whether a party won or lost an appeal"); *cf. Sherer v. Sherer*, 393 S.W.3d 480, 489 (Tex. App.—Texarkana 2013, pet. denied) (concluding that judgment contemplating further proceedings is final if the proceedings are "a ministerial act," but interlocutory if they "would require a judicial determination of disputed facts").

relied. *See In re United Scaffolding*, 377 S.W.3d 685, 689–90 & n.3 (Tex. 2012) (observing that the use of and/or in legal documents "inherently leads to ambiguity and confusion"). Because the jury's ambiguous answers are not findings of liability to each plaintiff, they cannot support a judgment. *See W & F Transp.*, 208 S.W.3d at 47 (reversing trial court's judgment and rendering take-nothing judgment for two defendants because verdict did not establish individual liability of either defendant); *J & C Drilling Co. v. Salaiz*, 866 S.W.2d 632, 640–41 (Tex. App.—San Antonio 1993, no writ.) (holding ambiguous finding that one "or" another defendant was liable did not provide a proper basis for judgment).

The remainder of the jury charge does not resolve these ambiguities. In Phase One, the damage questions submitted for the Feldmans were not conditioned on an affirmative finding of liability in favor of the Feldmans alone. Instead, Question No. 5 instructed the jury: "If your answer to Question No.1 [the arbitrary or capricious denial liability question] is "Yes," then answer Question No. 5. Otherwise, do not answer Question No. 5." Similarly, Question No. 6 instructed the jury: "If your answer to Question No. 3 [the negligent misrepresentation liability question] is "Yes," then answer Question No. 6. Otherwise, do not answer Question No. 6." As explained above, the jury's "Yes" answers to Questions 1 and 3 could represent a finding of liability only in favor of the Trustee.[6] Thus, the jury's damage awards in Questions 5 and 6 do not supply a finding that the Association is liable to the Feldmans.

Likewise, the Phase Two jury charge does not help clarify the ambiguous liability findings with respect to the Trustee. The Phase Two charge instructed the

---

[6] Nor did the body of either question direct the jury to determine the Feldmans' damages resulting from an arbitrary or capricious denial of their plans, or from a negligent misrepresentation on which they relied. Rather, each question asked the jury to determine the Feldmans' damages that "resulted from the date" of the earliest denial or misrepresentation.

second jury that they were only deciding the Trustee's damages because liability had already been found against the Association. The jury was told its "role in this case [is] to determine the amount of damages, if any, that [the Association] must pay [the Trustee]." Accordingly, the second jury's damage awards do not supply a finding that the Association is liable to the Trustee.

Plaintiffs contend that the record resolves the ambiguities because it shows, for example, that an arbitrary and capricious denial as to the Feldmans was also an arbitrary and capricious denial as to the Trustee. But we cannot rely on a disputed record to make a finding that a party contends the jury should have made. Although an appellate court "must try to interpret [a jury finding] in a manner that supports the judgment," and may examine the record in doing so, the court may not "speculate about what the jury intended in reaching a particular verdict or create certainty out of jury findings that are ambiguous." *W & F Transp.*, 208 S.W.3d at 45. The reason we cannot use the record to supply a finding of liability in the face of ambiguity is that "a court of appeals cannot make original findings of fact; it can only 'unfind' facts." *Lovelace v. Sabine Consol., Inc.*, 733 S.W.2d 648, 655 (Tex. App.—Houston [14th Dist.] 1987, writ denied).

This is not a case in which undisputed facts in the record allow us to ascertain the intent of the jury's liability findings "with definiteness and certainty." *Rountree Motor Co. v. Smith Motor Co.*, 109 S.W.2d 296, 300 (Tex. Civ. App.—Beaumont 1937, writ dism'd); *see W & F Transp.*, 208 S.W.3d at 45 (examining undisputed evidence to determine jury intended to hold W & F Transportation, Inc. liable even though charge referred to W & F Transportation). Nor do plaintiffs contend that the evidence of an arbitrary or capricious denial or of justifiable reliance on a negligent misrepresentation is conclusive, such that we should hold the Association liable to each of them as a matter of law.

16

Instead, the record shows that liability was disputed. Thus, even if the evidence, for example, could support a finding of an arbitrary and capricious denial as to the Feldmans, as well as an arbitrary and capricious denial as to the Trustee, "the verdict does not clearly show that that is what the jury intended to find." *J & C Drilling*, 866 S.W.2d at 641. We are simply not "permitted to speculate as to what the jury intended by an ambiguous answer which, because of its ambiguity, cannot constitute a proper basis for a judgment." *Cactus Drilling Co. v. Williams*, 525 S.W.2d 902, 907 (Tex. Civ. App.—Amarillo 1975, writ ref'd n.r.e.); *see Parker v. Keyser*, 540 S.W.2d 827, 831 (Tex. Civ. App.—Corpus Christi 1976, no writ) (holding jury finding that one "and/or" another defendant wrongfully removed property was ambiguous and could not support judgment, and concluding evidence showing both defendants had removed property could not sustain finding because "the evidence nevertheless is conflicting and in view of the 'and/or' submission . . . , we could only speculate what the jury intended").

To the extent plaintiffs contend the cases cited above are no longer good law, we disagree. Plaintiffs rely on the Supreme Court of Texas's opinion in *In re B.L.D.* in support of their argument that the Association failed to preserve error as to its first issue. *See* 113 S.W.3d 340, 348–50 (Tex. 2003). Plaintiffs point out that the Association's counsel did not object when the "and/or" language in the liability questions was discussed at the charge conference; indeed, the Association's own proposed charge included that language.

In *In re B.L.D.*, two parents asserted that they had a constitutional right to a separate jury finding as to each alleged statutory basis for termination of their parental rights under section 161.001(1) of the Family Code, so those bases should not have been submitted to the jury within a single broad-form question. *See id.* at 348. The supreme court held that the parents failed to preserve error because they

17

did not voice this complaint in the trial court. *See id*. at 348–50.

The jury charge in *In re B.L.D*. was not ambiguous, and the jury's verdict showed that petitioner was entitled to have the respondents' parental rights terminated. *See id*. at 344–45. In the case under review, however, the Association is not asserting a constitutional right to a certain type of jury charge, and the jury's verdict contains ambiguities that prevent this Court from determining whether the jury found the Association to have engaged in allegedly actionable conduct as to the Feldmans, the Trustee, or both. Plaintiffs have not cited, and our research has not revealed, any cases applying *B.L.D.* to conclude that a single finding of liability to (or against) multiple possible parties will, absent objection, support a judgment in favor of (or against) each party.[7] To the contrary, a defendant cannot be held accountable for a plaintiff's failure to secure unambiguous liability findings as to each party on which an accurate judgment can be based. *J & C Drilling*, 866 S.W.2d at 641; *Lovelace*, 733 S.W.2d at 655. We conclude that *In re B.L.D.* is not on point.

Plaintiffs also cite cases involving application of the *Casteel* harm analysis. *See Harris County v. Smith*, 96 S.W.3d 230, 236 (Tex. 2002); *Crown Life Ins Co. v. Casteel*, 22 S.W.3d 378, 387–88 (Tex. 2000). But the Association does not seek application of a *Casteel* harm analysis, and the cases cited by plaintiffs do not abrogate decisions in which courts have concluded that a defendant cannot be held

---

[7] This lack of authority is not surprising because the two scenarios have very different effects on the judgment. When a broad-form charge question allows a jury to answer affirmatively based on one or more statutory bases that support termination of parental rights, the result of such an answer is the same regardless of which particular bases the jury finds were proven: a judgment for the petitioner terminating the respondent's parental rights. But when a question allows a jury to answer affirmatively as to all plaintiffs and defendants if it finds liability between one or more plaintiffs and defendants, the correct judgment cannot be determined; it varies depending on which particular plaintiffs and defendants the jury finds liable.

18

accountable for a plaintiff's failure to secure unambiguous liability findings as to each party on which an accurate judgment can be based. *See J & C Drilling*, 866 S.W.2d at 641; *Lovelace*, 733 S.W.2d at 655. Accordingly, we conclude that the *Casteel* line of cases is also not on point.

Moreover, plaintiffs' waiver argument overlooks that the error the Association complains of here is in the judgment, not the jury charge. *J & C Drilling*, 866 S.W.2d at 640. Even assuming the charge is correct because no objection was made, the jury's answers are ambiguous and cannot support a judgment because they do not find liability to specific plaintiffs. *Cf. Soon Phat, L.P. v. Alvarado*, 396 S.W.3d 78, 105 (Tex. App.—Houston [14th Dist.] 2013, pet. denied) (distinguishing between claim of jury charge error and claim that charge, as submitted, cannot support the imposition of liability in a judgment). The Association preserved this issue regarding the judgment for our review by raising it in a motion for judgment notwithstanding the verdict as well as a motion for new trial. *J & C Drilling*, 866 S.W.2d at 640; *see also Lovelace*, 733 S.W.2d at 655 (rejecting argument that defendant "waived complaint by failing to object at trial to the submission of the form" of the charge because plaintiff had burden "to secure separate jury findings upon which an accurate judgment can be based").

For these reasons, we hold the jury's answer to each liability question is ambiguous and cannot support the trial court's amended final judgment awarding damages to the Feldmans and the Trustee. We sustain the Association's first issue and reverse that portion of the judgment.

### III. The trial court did not clearly abuse its discretion by granting plaintiffs a trial amendment to seek declaratory relief.

In its second issue, the Association contends the trial court abused its discretion when it granted a trial amendment permitting plaintiffs to add a cause of

19

action for declaratory relief. According to the Association, the trial amendment was prejudicial on its face because it added a new claim to the litigation. Plaintiffs respond that we should reject this argument because the Association did not show it was prejudiced by the trial amendment. We agree with plaintiffs.

Trial amendments are governed by Rule 66 of the Texas Rules of Civil Procedure, which provides that the court may allow amendments to a pleading and shall do so when the amendment would serve the presentation of the merits without prejudicing the opposing party's action or defense on the merits. Tex. R. Civ. P. 66. Under the rule, a trial court has no discretion to refuse a trial amendment unless: (1) the opposing party presents evidence of surprise or prejudice, or (2) the amendment is prejudicial on its face because it asserts a new cause of action or defense, and the opposing party objects to the amendment. *Stephenson v. LaBoeuf*, 16 S.W.3d 829, 839 (Tex. App.—Houston [14th Dist.] 2000, pet. denied). Trial amendments that are procedural in nature, such as conforming the pleadings to the evidence at trial, are mandatory. *Id.* Substantive amendments or those that change the nature of the trial are discretionary, and the court's decision to allow or deny them may be reversed only if the court clearly abused its discretion. *Id.*

A proposed trial amendment that asserts a new cause of action may be prejudicial on its face. *Id.* But the mere assertion of a new cause of action is not prejudicial to the opposing party as a matter of law. *Id.* Instead, we evaluate the amendment in the context of the entire case to determine prejudice. *Id.* A trial amendment is prejudicial on its face if (1) the amendment asserts a new substantive matter that reshapes the nature of the trial itself; (2) the new matter is of such a nature that the opposing party could not have anticipated it in light of the development of the case up to the time the amendment was requested; and (3) the opposing party's presentation of its case would be detrimentally affected by the

amendment. *Id.*

Under the above test, a discretionary trial amendment should not be rejected simply because it alleges a new cause of action. *State Bar of Tex. v. Kilpatrick*, 874 S.W.2d 656, 658 (Tex. 1994). Instead, to determine whether the trial court clearly abused its discretion in allowing a trial amendment adding a new cause of action, we must examine the three factors listed above in the context of the entire case. *See Stephenson*, 16 S.W.3d at 839. But the Association does not address these factors, arguing only that the trial amendment was prejudicial on its face simply because it added a new cause of action. Indeed, the Association contends that the Feldmans' request for declaratory relief duplicates their allegation of arbitrary or capricious denial, essentially conceding that the requested relief did not reshape the trial. We hold the Association has not established that the trial court clearly abused its discretion when it allowed the trial amendment adding a claim for declaratory relief. We overrule the Association's second issue.

## IV. The trial court did not err in granting declaratory relief.

The Association's third issue challenges certain declarations that the trial court included in its amended final judgment. In particular, the trial court declared that Tilbury I and Tilbury II were separate and distinct lots, with only one home on each lot, and that those homes could be remodeled or replaced subject to City of Houston requirements and the Tanglewood Deed Restrictions regarding location, height, exterior color, and building materials. The trial court also declared that the Tilbury I and Tilbury II lots had been reconfigured as reflected in the amended plat filed in the Harris County property records. The trial court declared that the reconfiguration reset the setback lines, which should be measured only from the reconfigured lot lines. The trial court further declared that the "improvements located on [each lot] are in full compliance with" the Tanglewood Section 8 Deed

21

Restrictions. Finally, the trial court declared that the Association, by approving the Tilbury I construction and the construction of a new fence along the reconfigured property line, had waived any position taken (1) that Tilbury II is not a separate and distinct single family lot; and (2) that the home on Tilbury II must be torn down. We disagree with the Association's arguments that the trial court erred in granting this declaratory relief.

## A.    Standard of review and applicable law

The purpose of the Declaratory Judgments Act is to settle and afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations. Tex. Civ. Prac. & Rem. Code Ann. § 37.002(b) (West 2008). A declaratory judgment is appropriate only if a justiciable controversy exists, resolvable by the declaration sought, concerning the rights and status of the parties. *Bonham State Bank v. Beadle*, 907 S.W.2d 465, 467 (Tex. 1995); *Russell v. Metro. Transit Auth. of Harris Cty.*, 343 S.W.3d 825, 833 (Tex. App.—Houston [14th Dist.] 2011, no pet.). There must be a real and substantial controversy involving a genuine conflict of tangible interests and not merely a theoretical dispute. *Id.*

We review declaratory judgments under the same standards as other judgments. Tex. Civ. Prac. & Rem. Code Ann. § 37.010 (West 2008). We look to the procedure used to resolve the issue below to determine the standard of review on appeal. *Lidawi v. Progressive Cty. Mut. Ins. Co.*, 112 S.W.3d 725, 730 (Tex. App.—Houston [14th Dist.] 2003, no pet.). Here, the trial court granted declaratory relief to plaintiffs following a directed verdict on undisputed evidence. A directed verdict is warranted when the evidence is such that no other verdict can be rendered and the moving party is entitled, as a matter of law, to judgment. *B & W Supply, Inc. v. Beckman*, 305 S.W.3d 10, 21 (Tex. App.—Houston [1st Dist.] 2009, pet. denied). We review a directed verdict under the same standard of

review as a legal sufficiency, or no-evidence, challenge. *Robertson v. Odom*, 296 S.W.3d 151, 155 (Tex. App.—Houston [14th Dist.] 2009, no pet.). We will uphold the trial court's determination in a declaratory judgment action if it is sustainable upon any legal theory supported by the evidence. *Stephenson*, 16 S.W.3d at 842.

Restrictive covenants are subject to the general rules of contract construction. *Pilarcik v. Emmons*, 966 S.W.2d 474, 478 (Tex. 1998); *Wiese v. Healthlake Cmty. Ass'n*, 384 S.W.3d 395, 400 (Tex. App.—Houston [14th Dist.] 2012, no pet.). Our primary goal when construing restrictive covenants is to ascertain and give effect to the intent of the drafters by using the language of the instrument as a guide. *Wiese*, 384 S.W.3d at 400. We examine the restrictive covenants as a whole in light of the circumstances present when they were written, affording words and phrases their commonly accepted meanings. *Id.* We review a trial court's interpretation of a restrictive covenant de novo. *Id.*

## B.     The declaratory relief does not change the Deed Restrictions or violate the Local Government Code.

The Association begins its third issue by arguing that the declaratory relief violates the Deed Restrictions, as well as the Local Government Code, because it modifies the restriction prohibiting more than one residence per lot. *See* Tex. Loc. Gov't Code Ann. § 212.016(a)(9)(B) (West 2008) (permitting owners of lots to obtain an amended plat as long as it "does not attempt to remove recorded covenants or restrictions"). We address these arguments together.

The Association asserts that because the Deed Restrictions reference the original plat filed in the Harris County property records in 1951, that plat was incorporated into and became part of the Deed Restrictions. The Association then argues that because the 1951 plat is part of the Deed Restrictions, the plaintiffs' efforts to reconfigure their joint property line—including obtaining an amended

plat from the City of Houston—were ineffective because the result is two residences on a single lot under the 1951 plat in violation of the Deed Restrictions. The Association cites two intermediate appellate court opinions to support its contention that the declaratory relief is inappropriate. *See Farmer v. Thompson*, 289 S.W.2d 351, 355 (Tex. Civ. App.—Fort Worth 1956, writ ref'd n.r.e.); *Witte v. Sebastian*, 278 S.W.2d 200, 203 (Tex. Civ. App.—Amarillo 1953, no writ). Both cases hold that a single homeowner cannot unilaterally modify deed restrictions by obtaining a revised plat from the local governmental authority, but neither case controls the outcome here.

First, we disagree with the Association's contention that the Deed Restrictions expressly incorporate the 1951 plat and thereby render the 1951 lot lines permanent. In its brief, the Association does not point to any express language in the Deed Restrictions that supports such a proposition. Although the provision on which the Association relied in the trial court does reference the 1951 plat, it also makes the restrictions and covenants contained in the Deed Restrictions "applicable to" the plat, and it recognizes that the plat is "subject to" the restrictions and covenants. This provision also recognizes that minor changes in the plat may be made for the efficient installation of improvements.[8] We conclude this language demonstrates an intent that the property lines found in the 1951 plat

---

[8] The Deed Restrictions provide:

Be It Resolved:

That the restrictions and covenants hereinafter set out shall be, and the same are, made applicable to Section 8 of Tanglewood . . . the plat of which was filed in the office of the County Clerk, in Harris County, Texas, under Clerk's No. 879845. Said map has been duly authenticated with proper certificates showing dedication of the streets, drives and easements to the use of the present and future residents and to the public, subject to the restrictions and covenants herein contained, to the same extent as though copied at length in said dedication certificate and said map is subject to only such minor changes as, in the judgment of Tanglewood, are necessitated by the efficient installation of improvements . . . .

24

could change within the limitations set forth in the Deed Restrictions, such as those found in paragraphs 3 and 4 quoted above.

Next, we conclude the property line reconfiguration does not change the Deed Restrictions' prohibition on more than one residence per lot because such an action is expressly authorized by paragraphs 3 and 4 of the Deed Restrictions. *See Wiese*, 384 S.W.3d at 400 (stating that a court construing a deed restriction should give words and phrases their commonly accepted meanings). Paragraph 4 allows parts of two or more adjoining lots facing the same street in the same block to be designated as one homesite, so long as the lot frontage is not less than the minimum for that block. It is not disputed that Tilbury I and Tilbury II, as reconfigured, meet these requirements. Paragraph 3 then allows a residence to be constructed on that homesite, even though it sits on portions of two or more lots as shown on the 1951 plat.

Because these paragraphs permit adjacent homeowners to rearrange the property lines of their lots (within certain limitations not at issue here), we conclude the Feldmans' expansion of Tilbury I onto property that was originally part of Tilbury II in the 1951 plat does not result in two residences on a single lot in violation of the Deed Restrictions. *See Sharp v. deVarga*, No. 03-05-00550-CV, 2010 WL 45871, at *6 (Tex. App.—Austin Jan. 8, 2010, pet. denied) (mem. op.) ("As replatted, there is no dispute that there exists only one residence per lot, and therefore, there is no violation of the one-residence-per-lot requirement."). Thus, the amended plat obtained by the Feldmans does not modify the Deed Restrictions. Instead, we conclude the amended plat is simply the City of Houston's recognition that the owners of Tilbury I and Tilbury II had shifted the property line between the two adjacent lots in compliance with the City of Houston's regulations.

To interpret the Deed Restrictions as the Association urges would render the language in paragraphs 3 and 4 permitting adjacent land owners to reconfigure their lot lines a nullity. *See Pilarcik*, 966 S.W.2d at 479 (stating that a construction that nullifies a restrictive covenant should be avoided). Therefore, we hold the trial court's declaration that Tilbury I and Tilbury II are separate lots, each containing a single residence that could be modified or rebuilt, is proper and does not violate the Deed Restrictions or section 212.016(a)(9)(B) of the Local Government Code.

## C. The trial court did not grant overly broad declaratory relief.

Next, the Association contends the declaratory relief granted by the trial court is overly broad because it declares that Tilbury I and Tilbury II are in full compliance with the Deed Restrictions. The Association argues the record does not contain evidence that Tilbury I and Tilbury II are in full compliance with every restriction, such as the prohibition against keeping cattle and hogs on the property.

We conclude the declaration is not as broad as the association contends. The trial court declared that "the *improvements* located on both Tilbury I and Tilbury II are in full compliance with the Restrictions for [Tanglewood] including, but not limited to, the setback lines" (emphasis added). Because the declaration is limited to the improvements, it is not overly broad and is supported by the evidence.

## D. The Association has not challenged the directed verdict on the issues of waiver and estoppel.

Finally, the Association challenges the trial court's declaration that the Association waived any position that Tilbury II is not a separate and distinct family lot and that the Association is estopped from arguing the home on Tilbury II must be torn down. The declaration was based on the grant of a directed verdict on the issues of waiver and estoppel. In this section of its brief, the Association does not mention the directed verdict. Instead, its argument begins, and ends, with a

26

statement of the legal principle that issues of waiver and estoppel are ordinarily questions of fact to be resolved by a jury.[9] While we agree that allegations of waiver and estoppel based on disputed facts present jury questions, the court can rule on those defenses as a matter of law when the facts are clearly established. *Caldwell v. Callender Lake Prop. Owners Improvement Ass'n*, 888 S.W.2d 903, 910 (Tex. App.—Texarkana 1994, writ denied). Because the Association has not challenged the directed verdict on those defenses, it has provided no basis for overturning the trial court's declarations that they apply.

Having addressed and rejected each argument raised in the Association's third issue on appeal, we overrule that issue.

## V. The trial court improperly awarded attorneys' fees to the Feldmans and the Trustee under the Declaratory Judgments Act.

In its fourth issue, the Association contends the trial court erred when it awarded attorneys' fees to the Feldmans and the Trustee. According to the Association, the awards of attorneys' fees under the Declaratory Judgments Act are improper because the declarations were sought solely for the purpose of obtaining fees, which are not otherwise recoverable under any other claim asserted by the Feldmans and the Trustee. We agree with the Association.

### A. Standard of review and applicable law

The Declaratory Judgments Act, Tex. Civ. Prac. & Rem. Code Ann. § 37.001 *et seq.* (West 2008), provides that a trial court may award costs and reasonable attorney's fees when doing so is equitable and just. *Id.* § 37.009.

---

[9] The Association also asserts in passing that the evidence is legally and factually insufficient to support the trial court's determination regarding waiver and estoppel. But it provides no analysis or record citations to support these assertions, so we do not consider them. *See San Saba Energy, L.P. v. Crawford*, 171 S.W.3d 323, 338 (Tex. App.—Houston [14th Dist.] 2005, no pet.).

27

Because the Act does not require an award of attorney's fees, on appeal we review the trial court's judgment awarding fees for an abuse of discretion. *Bocquet v. Herring*, 972 S.W.2d 19, 20 (Tex. 1998); *Bank of N. Y. Mellon v. Soniavou Books, L.L.C.*, 403 S.W.3d 900, 907 (Tex. App.—Houston [14th Dist.] 2013, no pet.). A trial court abuses its discretion if it misinterprets or misapplies the law or acts arbitrarily or unreasonably. *See Perry Homes v. Cull*, 258 S.W.3d 580, 598 & n.102 (Tex. 2008); *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241– 42 (Tex. 1985); *City of Carrollton v. RIHR, Inc.*, 308 S.W.3d 444, 454 (Tex. App.—Dallas 2010, pet. denied).

"[A] party cannot use the [Declaratory Judgments Act] as a vehicle to obtain otherwise impermissible attorney's fees." *MBM Fin. Corp. v. Woodlands Operating Co.*, 292 S.W.3d 660, 669 (Tex. 2009). As the supreme court has explained, "[i]f repleading a claim as a declaratory judgment could justify a fee award, attorney's fees would be available for all parties in all cases. That would repeal not only the American Rule [prohibiting fee awards unless specifically provided by contract or statute] but also the limits imposed on fee awards in other statutes." *Id.* For these reasons, "fees are not permissible under § 37.009 where [the declaration is sought] solely for the purpose of obtaining attorney's fees." *Kenneth Leventhal & Co. v. Reeves*, 978 S.W.2d 253, 258 (Tex. App.—Houston [14th Dist.] 1998, no pet.); *see also City of Carrollton*, 308 S.W.3d at 454 ("It is an abuse of discretion to award attorney's fees . . . when the [Act] is relied upon solely as a vehicle to recover attorney's fees.").

## B. The declarations were sought solely for the purpose of obtaining attorneys' fees.

In this case, the record shows that plaintiffs sought the declarations solely for the purpose of recovering their attorneys' fees. Prior to trial, plaintiffs alleged

in their live pleadings that the Association's rejection of their respective construction plans was arbitrary or capricious because such action was directly contrary to the Deed Restrictions. They also asserted causes of action alleging that the Association (among other things) made negligent misrepresentations, committed fraud, and breached the Deed Restrictions by failing to recognize the amended plat and approve their plans, and they sought damages and injunctive relief. Finally, they sought damages and injunctive relief and requested their attorneys' fees under both Chapter 38 of the Civil Practice and Remedies Code and section 5.006 of the Property Code.[10] The trial court rejected both statutes as a basis for the recovery of attorney's fees and raised the possibility of other theories that would allow plaintiffs to recover their fees.

Plaintiffs then sought and were granted leave to file a trial amendment seeking a declaratory judgment that their plans complied with the amended plat and the Deed Restrictions. In seeking leave near the end of their case, plaintiffs' counsel stated:

> [I]f the Court is of the opinion that Chapter 38 and the Property Code do not lend [themselves] to attorney's fees as presented, then we would ask for a trial amendment in order to assert it as a declaratory judgment action. . . . We don't have any new evidence, everything has been presented, it's just as the evidence presented I think that supports it that way if the Court feels it's more appropriate.

Later, in response to the Association's objection, plaintiffs' counsel reiterated that although they "still think that Property Code 5.006 and Chapter 38 . . . [are] applicable, recognizing the discussions we've had with the Court we think that it could also be framed in a declaratory judgment manner without any additional evidence, without anything else . . . ." After the trial court granted leave, plaintiffs

---

[10] Plaintiffs challenge the trial court's rejection of these contentions in their cross-appeal, which we address below.

filed their trial amendment, which stated: "The Plaintiffs heretofore have sought attorneys' fees under [section 5.006 of the Property Code and Chapter 38 of the Civil Practice and Remedies Code]. As an alternative theory of a claim for attorneys' fees, Plaintiffs make claim in this supplemental pleading under Texas Uniform Declaratory Judgments Act."

On this record, we hold that plaintiffs sought the trial amendment solely for the purpose of obtaining attorneys' fees. For this reason alone, the trial court abused its discretion when it awarded plaintiffs their fees under the Declaratory Judgments Act. *Kenneth Leventhal & Co.*, 978 S.W.2d at 258; *see also City of Carrollton*, 308 S.W.3d at 454.

### C. The declarations duplicate issues already before the trial court.[11]

A party also may not use a declaratory judgment action to seek the same relief afforded under another of its causes of action in order to obtain attorney's fees. *City of Houston v. Texan Land & Cattle Co.*, 138 SW3d 382, 392 (Tex. App.—Houston [14th Dist.] 2004, no pet.). Thus, if the declarations obtained in the judgment "merely duplicated issues already before the trial court," the party may not recover fees. *MBM Fin. Corp.*, 292 S.W.3d at 671; *see Anderson v. New Property Owners' Ass'n of Newport, Inc.*, 122 S.W.3d 378, 390–91 (Tex. App.— Texarkana 2003, pet. denied) (holding property owner not entitled to award of attorney's fees under Declaratory Judgments Act because his declaratory judgment counterclaim did not present any issues beyond the homeowners' association's cause of action).

These principles confirm that the Declaratory Judgments Act cannot support the fee awards in this case because the declarations duplicated issues already

---

[11] Chief Justice Frost does not join this Section V.C., which is the opinion of only Justice Busby.

before the trial court in plaintiffs' live pleadings. Each of the causes of action and arbitrary or capricious acts alleged by plaintiffs turned on the same two questions: (1) do the Deed Restrictions permit the Feldmans to expand their home; and (2) do they allow the Trustee to use or sell the resulting remainder of Tilbury II as a single-family residence? With respect to their claim that the Association breached the Deed Restrictions, plaintiffs sought not only damages but also an injunction based on the amended plat. The requested injunction would have directed the Association to approve the plans as submitted for both lots, and to cease and desist from restricting the combination of Tilbury I and II and the sale of the reconfigured Tilbury II as a separate and distinct residence.

The three paragraphs of the declaratory judgment address the very same issues regarding plaintiffs' compliance with the Deed Restrictions. The first paragraph validates the amended plat and declares that Tilbury I and Tilbury II are separate and distinct lots presently in compliance with the Deed Restrictions. The second paragraph bolsters these declarations with a further declaration that, based on past conduct by the Association, the Association had waived and is estopped from tearing down Tilbury II or asserting that Tilbury II is not a separate and distinct lot. Finally, the third paragraph again declares that Tilbury I and Tilbury II are separate lots that could be remodeled or replaced subject to compliance with the current Deed Restrictions' regulations on matters such as building materials, color, and location relative to the setback lines.

Plaintiffs contend the declaratory judgment does not duplicate their pre-existing pleadings because, in their view, these declarations deal with future rights. As explained above, however, the declarations focus on present compliance with the Deed Restrictions. Moreover, to the extent these declarations have future operation, they duplicate the relief plaintiffs sought by injunction. *See Tex. A&M*

31

*Univ. Sys. v. Luxemburg*, 93 S.W.3d 410, 425–26 (Tex. App.—Houston [14th Dist.] 2002, pet denied) (holding plaintiff had no right to recover attorney's fees under Declaratory Judgments Act because declarations "requested no greater or different relief" than claim for injunctive relief for constitutional violation).

Plaintiffs also cite cases addressing the propriety of obtaining declaratory relief generally.[12] But none of those cases support the contention that an award of attorney's fees is appropriate when, as here, the declaratory judgment action (1) duplicates pending claims for affirmative relief, and (2) is used as a vehicle for the recovery of otherwise unrecoverable attorney's fees.

Finally, plaintiffs' argument that the declaratory relief addresses matters in addition to those raised in their pre-existing pleadings directly contradicts their representations in support of their trial amendment. Plaintiffs represented to the trial court that their request for declaratory relief required no new evidence and was sufficiently similar to their pending causes of action to avoid surprise or prejudice to the Association. They also acknowledged during oral argument before this Court that the same legal reasoning applies to their declaratory judgment and

---

[12] *See BHP Petroleum Co. v. Millard*, 800 S.W.2d 838, 840–41 (Tex. 1990) (holding trial court's refusal to dismiss entire lawsuit following plaintiff's non-suit was proper because defendant's declaratory judgment counterclaim addressed matters not raised in the plaintiff's original claim); *Funes v. Villatoro*, 352 S.W.3d 200, 216–17 (Tex. App.—Houston [14th Dist.] 2011, pet. denied) (reversing and remanding for determination of attorney's fees under the Declaratory Judgments Act after rejecting contentions that the declaratory judgment action was duplicative of plaintiffs' tort claims and brought solely as a vehicle to recover attorney's fees); *Guniganti v. Kalvakuntla*, 346 S.W.3d 242, 251–53 (Tex. App.—Houston [14th Dist.] 2011, no pet.) (holding trial court did not abuse its discretion when it awarded attorney's fees because the declaratory relief action addressed validity of note and was not used as a mere ploy to recover attorney's fees); *see also CareFlite v. Rural Hill Emergency Med. Servs., Inc.*, 418 S.W.3d 132, 142–43 (Tex. App.—Eastland 2012, no pet.) (summarily affirming award of attorney's fees under the Declaratory Judgments Act in lawsuit brought pursuant to statute authorizing recovery of attorney's fees); *Indian Beach Prop. Owners Ass'n v. Linden*, 222 S.W.3d 682, 702, 705–07 (Tex. App.—Houston [1st Dist.] 2007, no pet.) (holding award of attorney's fees to defendants under the Declaratory Judgments Act was proper because recovery of fees was separately authorized by section 5.006(a) of the Texas Property Code).

to the questions submitted to the jury. Plaintiffs cannot have it both ways. If a trial amendment to add a request for declaratory relief is not prejudicial or a surprise because it involves the same legal reasoning and evidence and does not change the nature of the case, then it cannot at the same time serve as a non-duplicative basis for the recovery of attorney's fees.[13]

For these reasons, this case falls squarely within the rule that a party cannot use the Declaratory Judgments Act as a vehicle to obtain otherwise impermissible attorneys' fees. *MBM Fin. Corp.*, 292 S.W.3d at 669 (recognizing that a party can obtain declaratory relief but still not be entitled to an award of attorney's fees under the Declaratory Judgments Act). Because the declaratory relief awarded by the trial court duplicates the claims already before the court, and was added solely as a vehicle to allow plaintiffs to recover otherwise impermissible attorneys' fees, the trial court abused its discretion when it awarded plaintiffs their fees under the Declaratory Judgments Act. *Id.* at 671; *City of Carrollton*, 308 S.W.3d at 454–55.

## D. Conclusion

We sustain the Association's fourth issue on appeal and hold that the Declaratory Judgments Act cannot support the awards of attorneys' fees. Having sustained that issue, as well as the Association's first issue challenging the liability findings and damage awards, we need not address the Association's fifth and seventh issues regarding liability and damages.

---

[13] This conclusion does not mean that requests for declaratory relief added through a trial amendment can never support an award of attorney's fees. Rather, on this record, plaintiffs' specific representations in support of the trial amendment confirm the duplicative nature of the particular declaratory relief they sought.

**Plaintiffs' Cross-Appeal**

We turn now to the cross-appeal filed jointly by the Feldmans and the Trustee. Their cross-appeal raises three issues, which we address below.

**VI.    The trial court did not err in rejecting plaintiffs' request for attorneys' fees under section 5.006 of the Property Code and section 38.001 of the Civil Practice and Remedies Code.**

In their first cross-issue, plaintiffs contend the trial court erred when it refused to award them attorneys' fees under section 5.006 of the Texas Property Code and section 38.001 of the Civil Practice and Remedies Code. Plaintiffs argue they established that the Association breached paragraphs 3 and 4 of the Deed Restrictions, pointing to the trial court's declaratory judgment and the jury's finding in response to Question 1 that the Association's denial of their plans was arbitrary or capricious. In response, the Association contends neither statute supports an award of attorneys' fees on these facts. We agree with the Association.

**A.    Standard of review**

The availability of attorney's fees under a particular statute is a question of law. *Holland v. Wal-Mart Stores, Inc.*, 1 S.W.3d 91, 94 (Tex. 1999). Therefore, we review this issue de novo. *Headington Oil Co., L.P. v. White*, 287 S.W.3d 204, 215 (Tex. App.—Houston [14th Dist.] 2009, no pet.). We construe statutory provisions to ascertain and effectuate legislative intent, and we ascertain that intent by first looking to the plain and common meaning of the statute's words. *Tex. Mut. Ins. Co. v. Sonic Sys. Int'l, Inc.*, 214 S.W.3d 469, 476 (Tex. App.—Houston [14th Dist.] 2006, pet. denied). We must also view a statute's terms in context and give them full effect. *Id.*

In construing a restrictive covenant, a court's primary task is to determine

the intent of the framers of the covenant. *Sanchez v. Southampton Civic Club, Inc.*, 367 S.W.3d 429, 434 (Tex. App.—Houston [14th Dist.] 2012, no pet.). When, as here, the restrictive covenants are unambiguous, we construe them as a question of law. *Id.* Courts may not enlarge, extend, stretch, or change the words of a deed restriction by construction. *Weise v. Heathlake Cmty. Ass'n*, 384 S.W.3d 395, 401 (Tex. App.—Houston [14th Dist.] 2012, no pet.).

**B.    Section 5.006 of the Property Code does not authorize a fee award.**

Section 5.006 provides that in "an action based on breach of a restrictive covenant, . . . the court shall allow to a prevailing party who asserted the action reasonable attorney's fees . . . ." Tex. Prop. Code Ann. § 5.006. Only a party who successfully prosecutes a claim alleging a breach of a restrictive covenant is entitled to an award of attorney's fees under section 5.006. *Meyerland Cmty. Improvement Ass'n v. Belilove*, 624 S.W.2d 620, 620–21 (Tex. Civ. App.—Houston [14th Dist.] 1981, writ ref. n.r.e.).

Plaintiffs are not entitled to recover their attorneys' fees under section 5.006 because they have not successfully prosecuted a claim alleging a breach of a restrictive covenant. *See Anderson*, 122 S.W.3d at 390. There is no liability finding by the jury or declaration by the trial court that the Association breached a restrictive covenant found in the Deed Restrictions.[14] The trial court's declaratory judgment and the jury's finding that the Association's "denial of any of the Feldmans' and/or the Trustee's plans was arbitrary or capricious" do not establish

---

[14] Plaintiffs have not argued on appeal that the trial court erred when it refused to submit claims for breach of restrictive covenant and breach of contract to the jury. But, even if plaintiffs had made this argument on appeal, and we assumed the trial court erred when it refused to submit those claims to the jury, the result would be the same because we conclude that Paragraphs 3 and 4 of the Deed Restrictions are drafted in such a manner that the Association cannot violate them by simply denying a homeowner's plans.

35

that the Association breached either paragraph 3 or paragraph 4 of the Deed Restrictions.

Paragraphs 3 and 4 of the Deed Restrictions limit the actions that a Tanglewood homeowner can take; they do not limit the actions that the Association can take. *See Weise*, 384 S.W.3d at 401 (stating that a court may not insert additional language into deed restrictions in the guise of construing them). As a result, we conclude that paragraphs 3 and 4 of the Deed Restrictions are drafted in such a manner that the Association does not violate them by denying a homeowner's plans.

Our sister court's opinion in *Duncan v. Dominion Estates Homeowners Association*, No. 01-09-01086-CV, 2011 WL 3505298, at \*5–8 (Tex. App.— Houston [1st Dist.] Aug. 11, 2011, no pet.) (mem. op.), on which plaintiffs rely, is consistent with this analysis. In *Duncan*, the homeowners alleged and proved that the homeowners association took actions in violation of specific provisions of the restrictive covenants that imposed limits on the association. *Id.* For example, the association charged a special assessment to the Duncans without first obtaining the vote of a majority of the homeowners, and it imposed a fine without giving the required notice of the alleged restrictive covenant violation or allowing the Duncans a reasonable amount of time to respond to the allegation, as required by the restrictive covenants. *Id.* Here, in contrast, plaintiffs have not alleged or established that the Association took any action that violated a provision of the Deed Restrictions. Accordingly, they cannot recover their attorneys' fees under section 5.006 for "breach of a restrictive covenant" by the Association.

C.     **Section 38.001 of the Civil Practice and Remedies Code does not authorize a fee award.**

Plaintiffs also argue they are entitled to fees under section 38.001 of the

36

Civil Practice and Remedies Code. According to plaintiffs, because restrictive covenants are construed like contracts, a successful claim for a violation of a restrictive covenant is a contract claim subject to Chapter 38. We disagree that Chapter 38 authorizes an award of attorneys' fees to plaintiffs in this case.

The majority of the cases cited by plaintiffs stand for the unremarkable proposition that deed restrictions are construed like contracts. *E.g.*, *Cypress Nw. Assocs. v. Wayne Duddlesten, Ltd.*, No. 01-05-00827-CV, 2008 WL 457847, at *5 (Tex. App.—Houston [1st Dist.] Feb. 21, 2008, pet. denied) (mem. op.). The same may be said of many types of written documents, from deeds to easements to consent judgments, but that does not mean these documents always meet the essential elements of a valid contract or that non-compliance with their terms is always a breach of contract that will support an award of attorney's fees. With a single exception, plaintiffs' cited cases do not stand for the proposition that simply construing deed restrictions like contracts causes them to fall within Chapter 38.[15]

The plaintiffs do identify one case that cites Chapter 38 as authority to award attorney's fees for breach of a restrictive covenant to pay assessments, but it is distinguishable. *Candlewood Creek Neighborhood Ass'n v. Geshaye*, No. 05-11-

---

[15] *See Pilarcik*, 966 S.W.2d at 478 ("The restrictive covenants are subject to the general rules of contract construction."); *Curlee v. Walker*, 244 S.W. 497, 498–99 (Tex. 1922) (held, after recognizing parties' right to contract with relation to property as they see fit and with no mention of attorney's fees, that the trial court erred when it dissolved a temporary injunction preventing an owner from building in violation of the restrictive covenants); *Sanchez*, 367 S.W.3d at 436 (affirming award of attorney's fees under Property Code section 5.006 after recognizing that restrictive covenants are construed "like any contract"); *see also Duncan*, 2011 WL 3505298, at *6 (same); *Ski Masters of Tex., L.L.C. v. Heinemeyer*, 269 S.W.3d 662, 667, 674 (Tex. App.—San Antonio 2008, no pet.) (summarily affirming award of attorney's fees after stating that appellate courts apply the general rules of contract construction when construing restrictive covenants); *Scoville v. SpringPark Homeowner's Ass'n*, 784 S.W.2d 498, 502, 505 (Tex. App.—Dallas 1990, writ denied) (affirming award of attorney's fees under the Declaratory Judgments Act after recognizing that the rules of contract construction apply to restrictive covenants).

00380-CV, 2012 WL 3135721, at *2 (Tex. App.—Dallas August 2, 2012, no pet.) (mem. op.) (remanding for determination of fees "consistent with the evidence presented"). Although the opinion's recitation of the facts is meager, it suggests that the homeowner in that case had an agreement with the homeowners' association to pay the assessments and to provide a lien on her property as security. Parties are of course free to include compliance with a restrictive covenant as a term of their contract, but the evidence shows no contract for compliance here.

Moreover, neither the jury nor the trial court found a breach of contract that could support plaintiffs' award of attorneys' fees. *See* Tex. Civ. Prac. & Rem. Code Ann. § 38.001(8) (providing that a person may recover attorney's fees in addition to the amount of a valid claim and costs, if the claim is for an oral or written contract); *Mustang Pipeline Co. v. Driver Pipeline Co.*, 134 S.W.3d 195, 201 (Tex. 2004) (stating that section 38.001's most basic requirement is that the party seeking to recover attorney's fees must first prevail on a valid contract claim). As discussed above, paragraphs 3 and 4 of the Deed Restrictions are drafted in such a manner that the Association does not breach them by wrongfully denying a homeowner's construction plans. Therefore, even if Chapter 38 authorized an award of attorney's fees for breaching deed restrictions, it cannot support the award of attorneys' fees here because we already have determined that there is no finding the Association breached the Deed Restrictions.

Having addressed and rejected each argument raised in plaintiffs' first cross-issue, we overrule that cross-issue.

**VII. The trial court did not err when it rejected plaintiffs' request for civil damages under section 202.004(c) of the Property Code.**

In their second cross-issue on appeal, plaintiffs assert the trial court erred when it refused to assess civil damages against the Association pursuant to section 202.004(c) of the Property Code. The Association contends that under the plain language of the statute, plaintiffs may not recover civil damages. We agree with the Association.

**A.      Standard of review and applicable law**

When construing a statute, a reviewing court looks to the plain and common meaning of the statute's terms. *Tex. Dept. of Transp. v. City of Sunset Valley*, 146 S.W.3d 637, 642 (Tex. 2004). We read a statute as a whole and not just isolated portions. *Id.* "If the statutory language is unambiguous, we must interpret it according to its terms, giving meaning to the language consistent with other provisions in the statute." *Id.*; *see also* Tex. Gov't Code Ann. § 311.011(a) (West 2013) ("Words and phrases shall be read in context and construed according to the rules of grammar and common usage.").

Section 202.004(b) of the Property Code provides that "[a] property owners' association or other representative designated by an owner of real property may initiate, defend, or intervene in litigation . . . affecting the enforcement of a restrictive covenant or the protection, preservation, or operation of the property covered by the dedicatory instrument." Tex. Prop. Code Ann. § 202.004(b). It also provides in subsection (c) that "[a] court may assess civil damages for the violation of a restrictive covenant" of up to $200 per day. *Id*. § 202.004(c).

**B.      Plaintiffs may not recover civil damages under section 202.004(c) of the Property Code.**

Section 202.004(b) confers a statutory right to sue for enforcement of a

restrictive covenant only on "a property owners' association or other representative designated by an owner of real property," indicating that only those parties may recover statutory damages for the violation of a covenant under subsection (c). *Hawkins v. Walker*, 233 S.W.3d 380, 389 (Tex. App.—Fort Worth 2007, no pet. ). Courts considering this issue have held that an individual homeowner who is not a designated representative may not recover civil damages under section 202.004(c). *Id.*; *see also Jacks v. Bobo*, No. 12-07-00420-CV, 2009 WL 2356277, at *7 (Tex. App.—Tyler July 31, 2009, pet. denied) ("When subsection 202.004(c) is considered in the context of the statute's other provisions, it is evident that the legislature intended the civil damages provided in the subsection to be available only to the entities expressly named in the statute and to no others."). We agree with these holdings.

Plaintiffs do not contend they are a property owners' association, and there is no evidence they were designated by the Tanglewood Section 8 homeowners to file suit on their behalf. Instead, plaintiffs contend the Deed Restrictions authorize them to file suit to enforce the restrictions contained therein, and therefore they may collect civil damages under subsection 202.004(c). When a right is conferred by statute, however, the party seeking to exercise that right must show it fits within the language used in the statute. *Everett v. TK-Taito, L.L.C.*, 178 S.W.3d 844, 851 (Tex. App.—Fort Worth 2005, no pet.). Plaintiffs have not done so here. Because they are not a homeowners' association or designated representatives of the other homeowners, we hold they may not recover civil damages under section 202.004(c) of the Property Code. *Hawkins*, 233 S.W.3d at 389–90.

In addition, as explained above, plaintiffs did not secure a finding that the Association violated the Deed Restrictions. Such a finding is a necessary prerequisite to assessing civil damages under subsection (c) "for the violation of a

restrictive covenant."  For these reasons, the trial court did not err when it refused to assess civil damages against the Association under section 202.004(c) of the Property Code.  We overrule plaintiffs' second cross-issue on appeal.

## VIII. The trial court did not abuse its discretion when it rejected plaintiffs' request for a permanent injunction enforcing the declaratory judgment.

In their third and final cross-issue, plaintiffs contend the trial court abused its discretion when it denied their request for a permanent injunction enjoining the Association from "disapproving, delaying the approval of, refusing to approve, or denying approval of any plans and specifications as to Tilbury I and Tilbury II . . . as to issues in this case submitted by or on behalf of the Feldmans or the Trustee . . . in connection with any of the Feldmans or the Trustee's . . . use or enjoyment of their respective properties . . . ."  In response, the Association contends the trial court did not abuse its discretion because plaintiffs failed to establish their entitlement to a permanent injunction.  We agree with the Association.

### A.    Standard of review and applicable law

Section 37.011 of the Declaratory Judgments Act allows for "[f]urther relief based on a declaratory judgment" upon a showing that the relief is "necessary or proper."  Tex. Civ. Prac. & Rem. Code Ann. § 37.011.  Ancillary injunctive relief may be obtained when the evidence establishes that a defendant will not comply with a declaratory judgment.  *Howell v. Tex. Workers' Comp. Comm'n*, 143 S.W.3d 416, 433 (Tex. App.—Austin 2004, pet. denied).  The granting or denial of a request for a permanent injunction is within the trial court's sound discretion, and a reviewing court's inquiry is limited to the question whether the trial court abused its discretion.  *See Lakeside Realty, Inc. v. Life Scape Homeowners Ass'n*, 202 S.W.3d 186, 190 (Tex. App.—Tyler 2005, no pet.) (holding that abuse of discretion is the proper standard of review for an order denying relief under section

41

37.011); *see also Jim Rutherford Invs., Inc. v. Terramar Beach Cmty. Ass'n*, 25 S.W.3d 845, 848 (Tex. App.—Houston [14th Dist.] 2000, pet. denied) (standard of review for the granting or denial of a permanent injunction is abuse of discretion). Generally, that discretion is abused and subject to reversal when the trial court misinterprets or misapplies the law or acts arbitrarily or unreasonably. *See Perry Homes*, 258 S.W.3d at 598 & n.102 (Tex. 2008); *Downer*, 701 S.W.2d at 241–42; *Butler v. Arrow Mirror & Glass, Inc.*, 51 S.W.3d 787, 791 (Tex. App.—Houston [1st Dist.] 2001, no pet.).

Ordinarily, injunctive relief may be granted only when the applicant proves the occurrence of a wrongful act giving rise to imminent and irreparable harm for which there is no adequate remedy at law. *Jim Rutherford Invs., Inc.*, 25 S.W.3d at 849. These required elements change when the dispute concerns the enforcement of restrictive covenants. *Id.* In such cases, the applicant is required to prove only that the defendant intends to do an act that would breach the restrictive covenant. *Id.* When the requested injunctive relief arises out of a declaratory judgment, a presumption exists that a defendant will recognize and respect the rights declared by a declaratory judgment and will comply with the judgment in carrying out its duties. *Howell*, 143 S.W.3d at 433 (citing *Valley Oil Co. v. City of Garland*, 499 S.W.2d 333, 335–36 (Tex. Civ. App.—Dallas 1973, no writ)).

B. **The court could conclude that plaintiffs failed to rebut the presumption of compliance or show they lacked an adequate remedy at law.**

We already have determined there is no finding that the Association violated a restrictive covenant when it refused to approve plaintiffs' plans for Tilbury I and Tilbury II. Therefore, to be entitled to a permanent injunction, plaintiffs had to establish each of the ordinary elements for a permanent injunction, including the requirement that they faced an imminent and irreparable risk of harm. *See Jim*

42

*Rutherford Invs., Inc.*, 25 S.W.3d at 849. Plaintiffs have not pointed to any evidence in the record that the Association intends to violate the declaratory judgment's requirements once the appellate process is complete, and our own review of the record has revealed none.[16] Because plaintiffs did not introduce evidence rebutting the presumption that the Association would recognize, respect, and comply with the trial court's declaratory judgment once the appellate process is complete, we hold the trial court acted within its discretion when it rejected their request for a permanent injunction. *See Howell*, 143 S.W.3d at 432 ("Fear or apprehension of the possibility of injury is not sufficient; the plaintiff must prove that the defendant has attempted or intends to harm the plaintiff in the future.").

The trial court also acted within its discretion in denying plaintiffs' request for a permanent injunction for a second, independent reason: plaintiffs did not show they lacked an adequate legal remedy. Plaintiffs had the burden to establish that they suffered an irreparable injury because they did not have an adequate remedy at law. *See Cardinal Health Staffing Network, Inc. v. Bowen*, 106 S.W.3d 230, 235 (Tex. App.—Houston [1st Dist.] 2003, no pet.). An injury is irreparable if it cannot be adequately remedied at law through monetary damages. *Cytogenix, Inc. v. Waldroff*, 213 S.W.3d 479, 487 (Tex. App.—Houston [1st Dist.] 2006, pet. denied).

Plaintiffs alleged that the Association's refusal to approve their plans for Tilbury I and Tilbury II harmed them in various ways, including: (1) a lost sale of Tilbury II; (2) lost income because the Trustee was unable to rent Tilbury II; (3) delay in the construction of the Feldmans' home expansion and the loss of use of

---

[16] Plaintiffs have not cited any authority addressing when a party must abide by a declaratory judgment being challenged on appeal or risk being compelled to comply by way of a permanent injunction. *Cf. Valley Oil Co.*, 499 S.W.2d at 335–36 (affirming permanent injunction granted after appellate mandate had been filed in the trial court).

portions of the home during that time period; and (4) the Trustee's continuing liability for the payment of property taxes and homeowners' association fees for Tilbury II. Plaintiffs presented evidence that placed a monetary value on each of these alleged injuries.[17] Based on this evidence, we hold it was within the trial court's discretion to conclude that plaintiffs were not entitled to injunctive relief because monetary damages could fully compensate them for any harm they may have suffered as a result of the Association's actions. *See Schneider Nat'l Carriers, Inc. v. Bates*, 147 S.W.3d 264, 284 (Tex. 2004) ("If there is a legal remedy (normally monetary damages), then a party cannot get an injunction, too. Accordingly, awarding both an injunction and damages as to future effects would constitute a double recovery.").

Because plaintiffs have not established that the trial court abused its discretion when it denied their request for a permanent injunction, we overrule their third cross-issue on appeal.

## CONCLUSION

Having sustained the Association's first issue on appeal, we reverse the portion of the trial court's judgment awarding monetary damages to the Feldmans and the Trustee, and we render judgment that they take nothing on their causes of action seeking monetary damages. In addition, because we have sustained the Association's fourth issue on appeal and overruled plaintiffs' first cross-issue on appeal, we reverse the portion of the trial court's judgment awarding attorneys' fees to plaintiffs and render judgment that they take nothing on their requests for attorneys' fees. The remaining portions of the trial court's judgment challenged by

---

[17] In fact, the trial court's judgment included a per-diem award of future damages to the Trustee that would continue to accrue until all appeals were exhausted. Although we have reversed the damage awards because plaintiffs failed to secure liability findings to support them, this award demonstrates that plaintiffs had an adequate remedy at law.

the parties are affirmed.


/s/    J. Brett Busby
        Justice

Panel consists of Chief Justice Kem Thompson Frost, Justice Jeffrey Brown, and Justice J. Brett Busby.  (Justice Jeffrey Brown not participating).[18]

---

[18] After oral argument but before the court issued this opinion, Justice Jeffrey Brown was appointed to the Supreme Court of Texas and is no longer a justice on the Fourteenth Court of Appeals.  The two remaining justices have decided the case.  *See* Tex. R. App. P. 41.1(b).