

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-24-00190-CV

_____

JUSTIN ANDERSON, INDIVIDUALLY AND ON BEHALF OF THE ESTATE OF
DOROTHY MAGBY, Appellant

V.

MAYHILL BEHAVIORAL HEALTH, LLC D/B/A MAYHILL HOSPITAL,
Appellee

On Appeal from the 431st District Court
Denton County, Texas
Trial Court No. 21-4952-431

Before Bassel, Womack, and Walker, JJ.
Memorandum Opinion by Justice Walker

## MEMORANDUM OPINION

## I. INTRODUCTION

This is an appeal from a summary judgment rendered against Appellant Justin Anderson on statute of limitations grounds in a healthcare liability suit against Appellee Mayhill Behavior Health d/b/a Mayhill Hospital.

In three issues, Appellant argues the trial court erred by granting summary judgment because (1) Appellee should have been estopped from asserting a limitations defense in an amended pleading, (2) Appellee offered inadmissible evidence in support of its motion, and (3) there were disputed issues of material fact as to whether Appellant exercised due diligence in securing citation. We will affirm.

## II. FACTUAL AND PROCEDURAL BACKGROUND

From June 11, 2019 through June 14, 2019, Dorothy Magby (Plaintiff) was hospitalized and treated as a patient by Appellee.[1] On June 10, 2021, Plaintiff filed an original petition against Appellee, alleging negligence in the nature and quality of her care in June 2019.

On October 20, 2021, Plaintiff filed a request for issuance of citation. Appellee was served on October 23, 2021, and citation was returned on October 27, 2021.

---

[1]Dorothy Magby was the original Plaintiff, but she died during the pendency of the suit. Appellant, individually and on behalf of her estate, was later named as the plaintiff. For identification purposes, we use "Plaintiff" in reference to Dorothy Magby.

Appellee filed its original answer on November 15, 2021, and denied commission of any negligent or actionable conduct. Between March 7, 2022 and April 4, 2022, Appellee responded to interrogatories and requests for admission. On April 24, 2023, following a one-year lapse without any filings in the case, the trial court sent a "Notice of Non-Jury/Jury Dismissal Setting" to Plaintiff and Appellee. On June 21, 2023, Appellant filed a suggestion of death of Plaintiff, and the dismissal hearing was canceled.[2] On September 7, 2023, the trial court issued a scheduling order and discovery control plan with a deadline for amending pleadings of May 21, 2024, and a trial date of June 10, 2024.

On February 22, 2024, Appellee filed its first amended answer, asserting that the claim was barred by the statute of limitations. The next day, Appellee filed a motion for summary judgment asserting that Plaintiff had failed to properly serve Appellee before the statute of limitations expired, and Appellant filed a first amended petition, naming himself, individually and on behalf of the Estate of Dorothy Magby, as the plaintiff. Later that day, Appellee filed a first amended summary judgment motion, still relying upon limitations. In support of its first amended summary judgment motion, Appellee provided two exhibits: (1) Plaintiff's original petition filed June 10, 2021 (Exhibit 1) and (2) the e-filing request for issuance of citation filed on October 20, 2021 (Exhibit 2). A week later, Appellee separately filed a traditional and

---

[2]Plaintiff died on December 24, 2022.

no-evidence motion for summary judgment, which sought summary judgment on the merits.

On March 25, 2024, Appellant responded to Appellee's first amended summary judgment motion by arguing that (1) Appellee's Exhibit 2 constituted hearsay and was therefore inadmissible evidence, (2) Appellee waived a limitations defense because it had not been pled in its original answer, and (3) there was an issue of fact regarding Appellant's diligence in obtaining citation: the existence of a mistake.

As evidence of Appellee's waiver and his own diligence, Appellant provided declarations from an attorney and paralegal in the firm representing him. The attorney's declaration stated that she received no indication that Appellee would assert a statute of limitations defense based on its original answer, and the firm had a procedure to arrange service after filing suit. Similarly, the paralegal's declaration stated that the firm had an established procedure for securing service; however, service was inadvertently not requested and that mistake was compounded by another mistake in failing to calendar the follow-up.

On March 25, 2024, Appellee replied to Appellant's response. Appellee asserted that (1) Exhibit 2 met the hearsay exception for public records and statements against interest, (2) the assertion of its affirmative defense was timely, and (3) Appellant's claim of a mistake did not raise a fact issue regarding diligence.

At the hearing on Appellee's first amended summary judgment motion, Appellant's attorney revealed that citation had not been requested until October 2021

4

due to a mistake. The attorney explained to the trial court that the firm had standard procedures when filing a case—request citation at the time of filing and calendar regular follow-ups with the process server—but they were not done in this case. Appellant reasoned that the prescribed process was not followed due to mistake or inadvertence. The trial court found that Appellant had not shown diligence and granted summary judgment in favor of Appellee. This appeal followed.

## III. STANDARD OF REVIEW

We review a summary judgment de novo. *Travelers Ins. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010). We consider the evidence presented in the light most favorable to the nonmovant, crediting evidence favorable to the nonmovant if reasonable jurors could, and disregarding evidence contrary to the nonmovant unless reasonable jurors could not. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). We indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *20801, Inc. v. Parker*, 249 S.W.3d 392, 399 (Tex. 2008). When a trial court's order granting summary judgment does not specify the ground or grounds relied on for its ruling, we will affirm summary judgment if any of the theories presented to the trial court and preserved for appellate review are meritorious. *Provident Life & Accident Ins. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003); *Star-Telegram, Inc. v. Doe*, 915 S.W.2d 471, 473 (Tex. 1995).

A defendant is entitled to summary judgment on a statute of limitations defense if it conclusively establishes the limitations start date for the claims and that

5

limitations had run. *Regency Field Servs., LLC v. Swift Energy Operating, LLC*, 622 S.W.3d 807, 818 (Tex. 2021); *Erikson v. Renda*, 590 S.W.3d 557, 563 (Tex. 2019); *see* Tex. R. Civ. P. 166a(b), (c). In considering the inclusion or exclusion of amended pleadings and evidence, "the trial court's ruling will not be disturbed unless the complaining party clearly shows an abuse of discretion." *Bekins Moving & Storage Co. v. Williams*, 947 S.W.2d 568, 573–575 (Tex. App.—Texarkana 1997, no writ); *see In re J.P.B.*, 180 S.W.3d 570, 575 (Tex. 2005).

## IV. DISCUSSION

### A. AMENDED PLEADING FOR AFFIRMATIVE DEFENSE

Appellant argues in his first issue that Appellee's amended pleading to include the statute of limitations as an affirmative defense should not have been permitted because it was (1) facially prejudicial and (2) waived. We disagree.

### 1. Prejudice

Appellant first argues that Appellee's amendment should have been excluded because it was facially prejudicial.

"Parties may amend their pleadings . . . as they may desire by filing such pleas with the clerk at such time as not to operate as a surprise to the opposite party . . . ." Tex. R. Civ. P. 63. "A trial court has no discretion to refuse the amendment unless (1) the opposing party presents evidence of surprise or prejudice; or (2) the amendment asserts a new cause of action or defense, and thus is prejudicial on its

6

face, and the opposing party objects to the amendment." *Hakemy Bros. v. State Bank & Trust Co., Dall.*, 189 S.W.3d 920, 924 (Tex. App.—Dallas 2006, pet. denied).

When surprise or prejudice is demonstrated, either through evidence presented by the objecting party or on the face of a pleading asserting a new cause of action or defense, then the decision to grant or deny the amendment lies within the sound discretion of the trial court. *See Hardin v. Hardin*, 597 S.W.2d 347, 349 (Tex. 1980).

Appellant opposed Appellee's amendment and relied on the amendment being facially prejudicial as grounds for its exclusion. However, the mere fact that an amended pleading asserts a new defense does not prejudice the opposing party as a matter of law. *See Tanglewood Homes Ass'n, v. Feldman*, 436 S.W.3d 48, 64 (Tex. App.—Houston [14th Dist.] 2014, pet. denied).

An amendment operates as a surprise and is prejudicial on its face if (1) it asserts a new substantive matter that reshapes the nature of the trial itself, (2) the opposing party could not have anticipated the amendment in light of the development of the case up to the time that the amendment was requested, and (3) the opposing party's presentation of its case would be detrimentally affected by the amendment. *Lee v. Mem'l Prod. Operating, LLC*, No. 03-22-00063-CV, 2024 WL 847222, at *2 (Tex. App.—Austin Feb. 29, 2024, no pet.) (mem. op.) (citing *Tanglewood Homes*, 436 S.W.3d at 48). When making this determination, courts may consider various factors, such as how soon before trial the amendment was made; the addition of new facts, causes of action, defenses, or increased liability; whether new causes of action or defenses are

7

based on recently discovered matters; and whether the opposing party alleged surprise and that he was not prepared to try new matters. *See Stevenson v. Koutzarov*, 795 S.W.2d 313, 321 (Tex. App.—Houston [1st Dist.] 1990, writ denied).

Under the above test, a discretionary trial amendment should not be rejected simply because it alleges a new defense. *See State Bar of Tex. v. Kilpatrick*, 874 S.W.2d 656, 658 (Tex. 1994). Instead, to determine whether the trial court clearly abused its discretion in permitting a trial amendment that added an affirmative defense, we examine the three factors listed above in the context of the entire case. *See Stephenson v. LeBoeuf*, 16 S.W.3d 829, 839 (Tex. App.—Houston [14th Dist.] 2000, pet. denied).

The first factor supports Appellant's argument, but the others do not. Appellee's amendment to include an affirmative defense is a substantive matter that reshaped the nature of the trial, and it supports a finding of being facially prejudicial. *Tanglewood Homes*, 436 S.W.3d at 48.

The record indicates that outside of Appellee's responses to requests for admission and interrogatories, there was limited interaction between the parties. No witness depositions were ever noticed by either party during the case's pendency. While Appellant argues Appellee actively participated, Appellee's engagement appears minimal in terms of filings, appearances at proceedings, or putting forth an alternative theory of the case that Appellant would have otherwise relied upon. We are not persuaded that Appellee's participation in discovery so foreclosed Appellant's belief that Appellee would not subsequently file an amended answer or raise an affirmative

defense. Further, the defense raised by Appellee was not based on information previously unknown to or concealed from Appellant. In light of the case's development, or lack thereof, up to the time of the amendment's filing, Appellant could have anticipated an amended answer to include an affirmative defense. *Id.* Therefore, the second factor does not weigh in favor of the amendment being facially prejudicial.

Finally, Appellee's first amended answer was filed 35 days before the summary judgment hearing, 89 days before the trial court's scheduling order deadline, and 109 days before the trial date. These dates are relevant, as Appellee's amendment did not come on the eve of trial, and Appellant had over a month to review and respond to the amendment in the presentation of his case. The timeline does not support Appellant's argument that he was detrimentally affected in his ability to present any evidence regarding the claims. While the amendment may have been unexpected by Appellant, he offers no specifics on what procedures, research, or discovery mechanisms he would have used, but could not, as a result of its inclusion. The third factor weighs against finding that the amendment was facially prejudicial. *Id.*

Evaluating all three factors in the context of the entire case, we conclude that the trial court did not abuse its discretion in permitting the amendment.

## 2. Waiver

Appellant next argues that Appellee waived its limitations defense by not pleading the defense in its original answer and by filing a summary judgment motion on the merits.

Waiver is an intentional relinquishment of a known right or intentional conduct that is inconsistent with claiming that right. *Sun Expl. & Prod. Co. v. Benton*, 728 S.W.2d 35, 37 (Tex. 1987). Waiver is largely a matter of intent, and for implied waiver to be found through a party's actions, intent must be clearly demonstrated by the surrounding facts and circumstances. *Jernigan v. Langley*, 111 S.W.3d 153, 156 (Tex. 2003). "There can be no waiver of a right if the person sought to be charged with waiver says or does nothing inconsistent with an intent to rely upon such right." *Id.*

Because the statute of limitations is an affirmative defense, it must be pled in a responsive pleading, or it will be waived. Tex. R. Civ. P. 94; *see First Nat'l Bank in Dallas v. Zimmerman*, 442 S.W.2d 674, 675–76 (Tex. 1969). Here, Appellee pled the statute of limitations as an affirmative defense in a responsive pleading: its first amended answer on February 22, 2024.

However, Appellant asserts that Appellee waived its statute of limitations defense by not raising it in the original answer. Appellant has cited no authority supporting his contention that the statute of limitations must be pleaded in a defendant's original answer or else it is waived. *See PHI, Inc. v. LeBlanc*, No. 13-14-00097-CV, 2016 WL 747930, at *9 (Tex. App.—Corpus Christi-Edinburg Feb. 25,

10

2016, pet. denied) (mem. op.) ("Thus, in the absence of any authority supporting a conclusion that under these circumstances a party waives the application of maritime law, we cannot conclude that the trial court abused its discretion by determining that [appellee] had not waived it.").

In *Carlton Transport, Inc. v. Austin Fleet Maintenance, Inc*, the San Antonio court addressed the issue of waiver of affirmative defenses. No. 04-02-00449-CV, 2003 WL 22299990, at *1 (Tex. App.—San Antonio Oct. 8, 2003, no pet.) (mem. op.). In that case, the appellant filed a negligence suit more than two years from the date of the injury, and the claim was barred by the two-year statute of limitations. *See id.* The appellee did not plead the statute of limitations in their original answer, but they filed an amended answer including the affirmative defense of limitations on the same day as the summary judgment hearing. *Id.* Our sister court held that the appellee did not waive their right to summary judgment based on limitations when they failed to plead the defense in their original answer. *Id.* We reject Appellant's contention that Appellee's failure to include the statute of limitations as a defense in its original answer demonstrates that Appellee waived the defense.

Appellant also argues that Appellee abandoned its limitation defense when, a mere week after raising the defense in its amended answer, it filed its traditional and no-evidence motion seeking judgment on the merits. But Appellee did not amend its answer to drop its limitations defense, and its traditional and no-evidence motion was in addition to, rather than a replacement of, its first amended motion based on

11

limitations. Thus, its subsequent filing was not inconsistent with claiming the defense. *See Jernigan*, 111 S.W.3d at 156. We conclude Appellee's failure to plead the statute of limitations in its original answer and filing a summary judgment on the merits did not constitute a waiver of the defense.

We hold that Appellee's amendment did not amount to prejudice and that it was not waived. Accordingly, the trial court did not abuse its discretion in permitting the amendment, and we overrule Appellant's first issue.

## B. SUMMARY JUDGMENT EVIDENCE

In Appellant's second issue, he complains that Appellee's only evidence in support of summary judgment was (1) unauthenticated and (2) inadmissible hearsay. We disagree.

### 1. Authentication

Appellant argues that Appellee's Exhibit 2, included in its first amended motion for summary judgment, was unauthenticated and improperly considered as evidence.

Exhibit 2 was an uncertified copy of Appellant's October 20, 2021 e-filing request for issuance of citation. Exhibit 2 bore the associated cause number, the party and attorney names, and a digital stamp from the district clerk's office. Appellant's response never suggested that the document was faked, forged, or altered but instead complained that it was not a certified copy.

In *Fleming v. Wilson*, the supreme court addressed this issue. 610 S.W.3d 18, 20–22 (Tex. 2020). In that case, the appellant objected that because the copies of a

12

verdict and judgment attached to the appellee's motion were uncertified and not properly authenticated, they could not support summary judgment. *See id.* at 19. The trial court overruled the objection and granted appellee's summary judgment motion without explanation. *Id.* In its analysis, the supreme court reviewed Texas Rules of Evidence 901 and 902. *Id.* at 20.

Texas Rules of Evidence 901 and 902 govern how a proponent may authenticate or identify evidence. Rule 901 requires the proponent to "produce evidence sufficient to support a finding that the item is what the proponent claims it is" and then provides a non-exclusive list of examples of such evidence. Tex. R. Evid. 901. Rule 902 provides an exclusive list of certain items that are "self-authenticating" and "require no extrinsic evidence of authenticity in order to be admitted." Tex. R. Evid. 902. For example, a "publication purporting to be issued by a public authority" and "[p]rinted material purporting to be a newspaper or periodical" are self-authenticating. Tex. R. Evid. 902(5)–(6). And so are domestic public documents if they are "sealed and signed" or "signed and certified." Tex. R. Evid. 902(1)–(2). Under Rule 902, such documents are automatically authenticated.

Like in *Fleming*, though attached to Appellee's summary judgment motion, Exhibit 2 was neither sealed nor certified and therefore not self-authenticating. *See* 610 S.W.3d at 20. Thus, under Rule 901, Appellee had to "produce evidence sufficient to support a finding that" it was what Appellee claimed it to be. Tex. R. Evid. 901(a).

Rule 901 provides a non-exclusive list of examples of the types of evidence a proponent can use to authenticate an item, such as the testimony of a witness with knowledge of the item. Tex. R. Evid. 901(b)(1). Some of these examples indicate the need for extrinsic evidence, like opinion testimony comparing the item with a "specimen" the court has deemed genuine or identifying a person's voice. Tex. R. Evid. 901(b)(3), (5). Other examples, however, do not require or contemplate the need for extrinsic evidence. Subsection (b)(4), for example, provides that the "appearance, contents, substance, internal patterns, or other distinctive characteristics of the item, taken together with all the circumstances," may "satisf[y] the [authentication] requirement." Tex. R. Evid. 901(b)(4); *Fleming*, 610 S.W.3d at 20. Similarly, subsection (b)(7) recognizes that public records may be authenticated with evidence that they were "filed in a public office as authorized by law" or are "from the office where items of this kind are kept," without suggesting that such evidence cannot be found on or within the item itself. Tex. R. Evid. 901(b)(7).

Rule 902 states that self-authenticating items "require no extrinsic evidence of authenticity in order to be admitted." Tex. R. Evid. 902. But that does not mean that Rule 901 requires extrinsic evidence. Unlike Rule 901's non-exclusive list, Rule 902 provides an exclusive list of items that courts must always accept as authentic, but it does not preclude courts from accepting other items that demonstrate on their face that they are what the proponent claims they are. *Fleming*, 610 S.W.3d at 21. It requires the trial court to evaluate the evidence that supports the item's authenticity—

14

whether found within the item itself or provided by an extrinsic source. *Id.* The supreme court in *Fleming* held that if the proponent produces only the item, but the item itself constitutes or contains evidence that it is what the proponent claims it is, the court may find it to be authentic. *Id.*

Considering Exhibit 2's "appearance, contents, substance, . . . [and] other distinctive characteristics," taken "together with all the circumstances," we cannot say that the trial court abused its discretion by accepting the document as authentic. *See* Tex. R. Evid. 901(b)(4).

Further, the trial court could have permissibly found that the documents were authentic under Rule 901(b)(7), which recognizes that public documents may be authenticated by evidence that they were "recorded or filed in a public office as authorized by law" or are "from the office where items of this kind are kept." Tex. R. Evid. 901(b)(7). While a certified copy of a public record would automatically be self-authenticating, an uncertified copy of a public record could itself contain sufficient evidence that it was filed or kept in a public office. *See Fleming*, 610 S.W.3d at 21; Tex. R. Evid. 902(4); Tex. R. Evid. 901(a). Here, the cause number, party and attorney names, and digital stamp from the district clerk's office on the document could qualify as sufficient evidence of authenticity, so the trial court similarly did not abuse its discretion.[3] *See Fleming*, 610 S.W.3d at 21.

---

[3]We also point out that since Exhibit 2 was in the trial court's records, the trial court could have taken judicial notice of the filing date.

## 2. Hearsay

Appellant next argues that even if the document was authentic, it still could not qualify as competent summary judgment evidence because it is inadmissible hearsay. However, Appellant does not identify which statements are purportedly hearsay nor does he provide an analysis of why they are hearsay. *See* Tex. R. App. P. 38.1(i).

The public records exception to the hearsay rule provides, among other things: "[r]ecords, reports, statements[,] or data compilations, in any form, of public offices or agencies setting forth the activities of the office or agency" are not excluded by the hearsay rule. *In re S.W.*, No. 02-11-00200-CV 2012 WL 3115749, at *3 (Tex. App.—Fort Worth, Aug. 2, 2012, no pet.) (mem. op.) (citing *1001 McKinney, Ltd. v. Credit Suisse First Boston Mtg. Cap.*, 192 S.W.3d 20, 28 (Tex. App.—Houston [14th Dist.] 2005, pet. denied). Rule 803(8) creates a presumption of admissibility, and it is the burden of the party opposing admission to show that a document proffered under this hearsay exception is untrustworthy. *Id.*

---

A trial court may take judicial notice of its file at any stage of the proceedings and is presumed to have done so with or without a request from a party. *Att'y Gen. of Tex. v. Duncan*, 929 S.W.2d 567, 570–71 (Tex. App.—Fort Worth 1996, no writ) (quoting *Lacy v. First Nat'l Bank of Livingston*, 809 S.W.2d 362, 367 (Tex. App.—Beaumont 1991, no writ)). Thus, evidence on file need not be referenced in the summary judgment motion to be considered by the trial court in ruling on the motion. *Duncan*, 929 S.W.2d at 567.

Though the record is silent on whether the trial court took judicial notice of the filing date of Appellant's e-filing request for issuance of citation, it could have reviewed its files in consideration of the summary judgment motion. *Id.*

16

Appellant did not proffer any evidence to call into question the trustworthiness of Exhibit 2, only that it was hearsay. Further, Appellee provided Exhibit 2 as a copy of public records, which Rule 166a(c) permits courts to rely on if they are "authenticated or certified." *See* Tex. R. Civ. P. 166a(c). If, as we have held, the trial court acted within its discretion by finding the document authentic, then it was permitted to review Exhibit 2 under the public record exception to hearsay. Thus, the trial court did not abuse its discretion in considering Exhibit 2 when granting summary judgment.

We hold that Appellee's Exhibit 2 had sufficient evidence of authenticity and was an exception to hearsay. Accordingly, the trial court did not abuse its discretion in considering Appellee's evidence in support of his motion, and we overrule Appellant's second issue

## C. Disputed Issues of material Fact

Appellant argues in his third and final issue that the trial court erred by granting summary judgment because there was a disputed issue of material fact: whether he exercised due diligence in obtaining citation. We disagree.

The statute of limitations on health care liability claims is "two years [a] from the occurrence of the breach or tort," or if that date is not ascertainable, "[b] from the date the medical or health care treatment that is the subject of the claim or the hospitalization for which the claim is made is completed." Tex. Civ. Prac. & Rem. Code Ann. § 74.251(a). But a plaintiff's provision of statutorily compliant, pre-suit

17

notice of a claim "toll[s] the applicable statute of limitations to and including a period of 75 days," assuming limitations has not already expired when the pre-suit notice is provided. *Id.* § 74.051(c).

It was undisputed by the parties that Appellant treated Plaintiff from June 11, 2019 to June 14, 2019, and Appellant's original petition was filed on June 10, 2021— before the statute of limitations lapsed. Appellant provided proper notice of the claim to Appellee; therefore, the limitations period was tolled 75 days and ended on August 28, 2021. It is also undisputed that Appellant did not serve Appellee until October 23, 2021.

If a plaintiff files a petition within the limitations period, service of process outside the limitations period may still be valid if the plaintiff exercises diligence in procuring service on the defendant. *Ashley v. Hawkins*, 293 S.W.3d 175, 179 (Tex. 2009); *see Proulx v. Wells*, 235 S.W.3d 213, 215 (Tex. 2007) (explaining that "a timely filed suit will not interrupt the running of limitations unless the plaintiff exercises due diligence in the issuance and service of citation"). If a plaintiff diligently effects service after the expiration of the statute of limitations, then the date of service relates back to the date of filing. *Proulx*, 235 S.W.3d at 215.

Once a defendant affirmatively pleads limitations and establishes that service occurred after the limitations period expired, the burden shifts to the plaintiff to explain the delay. *Ashley*, 293 S.W.3d at 179; *Proulx*, 235 S.W.3d at 216. The plaintiff must then present evidence to raise a fact issue as to due diligence in service of

process. *Proulx*, 235 S.W.3d at 216. If the plaintiff's evidence raises a material fact issue regarding the diligence of service, the burden then shifts back to the defendant to conclusively show why, as a matter of law, the evidence is insufficient. *Id.*

To explain a delay in service, "it is the plaintiff's burden to present evidence regarding the efforts that were made to serve the defendant, and to explain every lapse in effort or period of delay." *Proulx*, 235 S.W.3d at 216; *see Zimmerman v. Massoni*, 32 S.W.3d 254, 256 (Tex. App.—Austin 2000, pet. denied) (holding that a plaintiff's attorney must evaluate continuously the state of efforts to secure service). The duty to use due diligence continues from the date the suit is filed until the date the defendant is served. *See Taylor v. Thompson*, 4 S.W.3d 63, 64 (Tex. App.—Houston [1st Dist.] 1999, pet. denied).

"Generally, the question of the plaintiff's diligence in effecting service is one of fact, and is determined by examining the time it took to secure citation, service, or both, and the type of effort or lack of effort the plaintiff expended in procuring service." *Proulx*, 235 S.W.3d at 216. The "relevant inquiry is whether the plaintiff acted as an ordinarily prudent person would have acted under the same or similar circumstances and was diligent up until the time the defendant was served." *Id.* But if no excuse is offered for the delay or if the lapse of time coupled with the plaintiff's acts conclusively negate diligence, lack of diligence will be found as a matter of law. *Id.*; *NETCO, Inc. v. Montemayor*, 352 S.W.3d 733, 739 (Tex. App.—Houston [1st Dist.] 2011, no pet.).

Here, Appellant's proffered issue of material fact is whether he exercised due diligence in the issuance and service of citation. Since Appellee affirmatively pled limitations and established that service occurred after the limitations period expired, the burden shifted to Appellant to present evidence regarding the efforts that were made to serve Appellee and to explain every lapse in effort or period of delay. *See Proulx*, 235 S.W.3d at 216.

We first examine the time it took to secure citation, service, or both. *Id.* Appellant sought issuance of citation 53 days beyond the limitations date and 128 days after the filing of his original petition. Next, we consider the type or lack of effort Appellant expended in procuring service. *Id.* Between June 10, 2021 and October 20, 2021, Appellant took no action to request citation. Acquiring citation well beyond the limitations date and taking no effort to procure service is not due diligence.

As he did in his summary judgment response, Appellant argues that evidence of his efforts to secure citation are founded in "mistakes" from not following established firm procedures. His summary judgment response and evidence explain that the firm's usual procedure is to request service immediately after a suit is filed; however, the firm mistakenly did not request citation and that mistake was compounded by a subsequent failure to calendar a follow up. Yet, merely admitting or identifying the existence of a mistake does not, in and of itself, provide evidence to explain a delay in obtaining citation. *See Proulx*, 235 S.W.3d at 215. Appellant's evidence does not

20

explain why or how the mistakes occurred, and without such an explanation, his proffered excuse is not indicative of due diligence.

Appellant cites several cases for the proposition that mistakes can show diligence, but two of those cases involve situations other than late service and are inapplicable. *See Sutherland v. Spencer*, 376 S.W.3d 752, 755 (Tex. 2012); *Garcia v. Kastner Farms, Inc.*, 774 S.W.2d 668, 669 (Tex. 1989). In another case cited by Appellant, there was an explanation for the mistake—not just the mistake itself—such as miscommunication with the clerk's office or reassignment of the attorney. *See Valdez v. Charles Orsinger Buick Co.*, 715 S.W.2d 126, 127 (Tex. App.—Texarkana 1986, no writ). Here, Appellant's evidence did not explain why the firm's usual practices were not followed or why no one noticed the lack of service until October 2021. *See Tarrant County v. Vandigriff*, 71 S.W.3d 921, 925 (Tex. App.—Fort Worth 2002, pet. denied) (stating that plaintiff should have discovered through the exercise of diligence that defendant had not been properly served).

Under Appellant's theory, he provided some excuse and that raises a fact issue on due diligence. However, as the trial court reasoned at the summary judgment hearing, "the law requires not just some excuse. It requires a showing of diligence, and that's not been met." Considering Appellant's evidence and the unexplained lapses in his efforts to secure citation, we conclude that it does not rise to the level of diligence. *Id.*

We hold that Appellant's evidence fails to raise a genuine issue of material fact regarding his due diligence in obtaining service of process.  Accordingly, we overrule his third issue.

## V.  CONCLUSION

Having overruled Appellant's three issues, we affirm the trial court's judgment.

/s/ Brian Walker

Brian Walker
Justice

Delivered:  February 6, 2025